## THE CITY OF ATLANTA *vs.* BUCHANAN.

[This case was argued at the last term, and the decision reserved.]

1. If a request to charge be not all proper, the court need not give any part of it in charge.

(*a.*) If a city constructed a bridge in one of its streets of loose planks, or upon re-constructing it, the planks were left unfastened by its employés, notice to them is notice to the city.

(*b.*) A request to charge that such defects must have been so open and notorious and of such a character and have existed for such a length of time that the city knew or might have known of them was too broad.

2. The newly-discovered evidence, with the depositions in answer thereto, could not change the verdict.

3. Where it was shown that a bridge in a street, over which the plaintiff was passing when injured, was in general and daily use by pedestrians, though in the street and not the sidewalk, it being the best crossing, especially in bad weather, there was no error in refusing to charge that a pedestrian could not, for mere convenience or pleasure, deviate from the established line of the sidewalk and go upon a bridge or crossing designed for the street or roadway proper, there being no evidence that the plaintiff went upon it for pleasure, but only as other passers did.

(*a.*) Besides, this ground is not certified.

4. A city is bound to keep its streets, sidewalks and bridges in a reasonably safe condition.

(*a.*) Keeping, as so used, includes the proper construction or reconstruction of a bridge, forming part of the street.

5. The evidence sustains the verdict.

(*a.*) The cases in 70 *Ga.*, 193, and 66 *Id.*, 195, do not conflict with the ruling in this case.

March 9, 1886.

Municipal Corporations. Streets and Sidewalks. Roads and Bridges. Before Judge CLARKE. City Court of Atlanta. December Term, 1884.

Reported in the decision.

E. A. ANGIER; J. T. PENDLETON, for plaintiff in error.

HOKE & BURTON SMITH, for defendant.

JACKSON, Chief Justice.

This is a suit against the city of Atlanta for damages incurred by reason of a badly constructed bridge. The verdict was against the city, and it made a motion for a new trial on the following grounds, contained in the abstract of her counsel and pressed in this court:

(9.) Because the court refused to charge as follows: "The alleged defect or defects in the bridge must have been so open and notorious, and of such a character, and existed for such a length of time, in the judgment of the jury, as that the city knew of the same, or, by the exercise of reasonable diligence, could have known thereof. There are two ways of proving this notice, viz., one by express or actual notice to defendant, or its proper officers or servants, and the other by implied or constructive notice, *i. e.*, the defect or defects had been there so long that, with reasonable diligence, the defendant could have known of and remedied them."

(10.) Because of the newly-discovered testimony of Mrs. A. V. Green. In connection with this ground, the following affidavits were presented:

*E. A. Angier* swears that the day before the Buchanan case was tried, he was leaving his office for the court-room, to attend the trial of a case of Spencer *vs.* City, in which case a jury had been stricken, and it was only a few minutes before the sitting of the court. As he was about to leave the office, Mr. Green asked him when the Buchanan case would be tried. He replied that it came next to the Spencer case, which was now on trial. Said Green then said Mrs. Buchanan had been suffering with rheumatism in the limb injured before the injury, and would not have received the injury but for that, and had so told his wife, but that she was unwell and could not attend court. Angier told him he would take her interrogatories, and hurried on to the court-house. He told Mr. Smith, Mrs. Buchanan's attorney, about it, and he agreed to cross interroga-

tories. Mrs. Green was at the office to see Mr. Clarence Angier, who was in the insurance business. Angier sent out to see Mrs. Green, but could not find her, he having confused her name with the name of the street upon which she lived, and thought that her name was Davis. He used every endeavor to find out the lady, but was unsuccessful. Got Clarence Angier to examine his books to see if any such name appeared thereon. After the case was tried, he met Green at Judge Tanner's court, and first found out his mistake in the name; that he and J. T. Pendleton alone managed the litigation for the city, and he knew nothing of the testimony of Mrs. Green, except as stated.

Pendleton makes affidavit that he knew nothing of what Mrs. Green would testify, except as stated in Angier's affidavit.

*Mrs. A. V. Green:* That she knew Mrs. Buchanan lived close to her. Saw her after her injury and talked to her about it. She said she had suffered from rheumatism in the hip that was injured until it had produced disease, and that she had to use a crutch sometimes on that account.

Eleven persons make affidavit that they are acquainted with Mrs. Green, and that she is worthy of credit in a court of justice.

Counter showing:

*Mrs. Buchanan:* Mr. Green and Mr. Evins, her son-in-law, are on bad terms. She did not tell Mrs. Green any of the things sworn to by her in her affidavit. She was much afflicted with rheumatism thirty years ago, but for twenty-five years had been entirely well, and may have told Mrs Green about that.

*Mr. Dodd:* Knows Mrs. Buchanan well, and never saw her walk with a crutch; was unusually active for a lady of her age.

*L. H. Harwell:* Had known Mrs. Buchanan twenty-five years. She had always been in excellent health. Thinks the fall produced all her troubles.

*W. J. Speairs:* Has known Mrs. Buchanan fifteen years;

has always been in good health.   Has known her to walk twelve miles in a day.

*R. F. Lester:* Has been the physician of McDuffy's family for twelve months.   Never knew Mrs. B. to be in any trouble on account of ill health.   Never saw her limp.

(11.) Because the court refused to charge that a pedestrian or foot-passenger cannot, for mere convenience or pleasure, deviate from the established line of the sidewalk, and go upon a bridge or crossing designed for the street or road-way proper.

(17.) Because the court erred in charging : "The city of Atlanta is bound by law to keep its streets and sidewalks and bridges in a reasonably safe condition for travel in the ordinary modes of traveling by day as well as by night, and if it fails to do so, it is liable for injuries sustained in consequence of such failure."

1. There was no error in refusing the request asked in the 9th ground, above set out for two reasons : First, because, taking the entire request together, all must be right or the judge need not give any part; and secondly, because, if the city constructed the bridge of loose planks, or when the city re-constructed it, if such planks were left unfastened by its employés, notice to them is notice to the city. Part of the request, in regard to the open and notorious defect of the bridge, seems too broad, under the ruling in *Bellamy vs. The City of Atlanta,* 75 *Ga.,* 167 ; somewhat closer inspection of the bridges of the city is necessary, to protect it from damages, than that which is notorious to the whole public.

2. The newly-discovered evidence, with the depositions in answer thereto, could not change the verdict.

3. It was in proof that pedestrians very generally and daily used the bridge, though over the street and not the sidewalk; therefore, it was right to refuse the request in the 11th ground.   There is no proof that the bridge was used for pleasure, but as other people did, as the best crossing, especially in bad weather.   Besides, the ground is not certified.

The City of Atlanta *vs.* Buchanan.

4. We are clear that the city is bound to keep its streets, sidewalks and bridges in a reasonably safe condition, and there is no error in so charging. It is insisted that there is here, because this declaration alleges that the fall occurred by reason of a bridge faulty in its construction. The court charged that, unless such a construction existed, there could be no recovery. In connection with such an instruction, to lay down the general principle complained of could hardly hurt the plaintiff in error. There is proof that the bridge was badly re-constructed or re covered in part, if not altogether, and there being no objection to that evidence going to the jury, the court might, with still more propriety and harmlessness, lay down the general rule, to keep the bridge in a reasonably safe condition. " To keep," applied to streets, sidewalks and bridges, might very reasonably. include the idea expressed by the words, " to construct, to make," especially when coupled with the words, " in a reasonably safe condition for travel." To keep a street in such safe condition means to have it so, to make and re-make it so, to construct that sort of bridge, and re-construct it when rotten or out of repair. The second act of fastening plank upon it and making it safe, is construction, if not of all the bridge, at least of an essential part to safe passage over it; and the allegation that the bad construction of it, in having loose and unfastened planks thereon, is supported by the proof that the city, when it re-laid the planks, so constructed the covering of the bridge as to make it unsafe.

5. On the whole, we think that the evidence sustains the verdict, and that a new trial should not be granted, even if there were errors of a character not vital to justice under law and facts. We are unable, however, to discover errors of law on the trial. Nothing in 70 *Ga.*, 193, or 66 *Id.*, 195, cited by plaintiff in error, collides with the ruling above.

Judgment affirmed.