### MINTON v. CITY OF SYRACUSE.

(Supreme Court, Appellate Division, Fourth Department.   March 8, 1916.)

1. MUNICIPAL CORPORATIONS ☞756—INJURIES ON SIDEWALK—LIABILITY OF CITY—STATUTE CONTROLLING.

Second Class Cities Law (Consol. Laws, c. 53) § 244, and not Laws 1885, c. 26, as amended by Laws 1905, c. 682, the charter of the city of Syracuse, controls the question of the liability of the city for injuries to a pedestrian while attempting to cross a street by a crosswalk left covered with broken-up pieces of snow and ice by city employés.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1588; Dec. Dig. ☞756.]

2. MUNICIPAL CORPORATIONS ☞788(2)—INJURIES ON SIDEWALK—NOTICE OF DEFECTIVE CONDITION—STATUTE.

Second Class Cities Law, § 244, providing that no action shall be maintained against the city for damages or injuries to the person sustained solely in consequence of the existence of snow or ice upon any sidewalk, unless written notice thereof was actually given the commissioner of public works, and there was a failure or neglect to remove such snow or ice, or make the place reasonably safe, does not apply where employés of a city had broken up the ice and left it on a crosswalk, and a pedestrian was injured thereby.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1642, 1652; Dec. Dig. ☞788(2).]

3. MUNICIPAL CORPORATIONS ☞755(1)—DEFECTS IN STREETS—LIABILITY—POWER OF LEGISLATURE.

The Legislature has power to change the rule that a municipality is liable, without previous notice of the defect, for injuries on a sidewalk, where the dangerous condition is produced by the city, through its employés, and to exempt municipal corporations absolutely from liability for defects in streets due to the negligence of their servants.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1587, 1589, 1590; Dec. Dig. ☞755(1).]

4. MUNICIPAL CORPORATIONS ☞756—STATUTES—CONSTRUCTION.

A statute which creates a new rule, unknown to the common law, for the protection of a city against its own citizens, as by exempting the city from liability for injuries from defects in streets or sidewalks unless written notice of the condition was given the city prior to the accident, should be construed strictly against the city, and liberally in favor of the citizen.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1588; Dec. Dig. ☞756.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. MUNICIPAL CORPORATIONS ⬤⇒821(7)—INJURIES ON SIDEWALK—QUESTION FOR JURY.**

In an action by a pedestrian for injuries received when he attempted to pass over a crosswalk covered with loose pieces of snow and ice, which employés of the public works department of the city had broken up and neglected to remove, whether the city was negligent was for the jury.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1748; Dec. Dig. ⬤⇒821(7).]

Appeal from Trial Term, Onondaga County.

Action by Harry Minton against the City of Syracuse. From a judgment for defendant, dismissing the complaint at the trial on the pleadings and opening of plaintiff's counsel, plaintiff appeals. Judgment reversed, and new trial ordered.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, and MERRELL, JJ.

H. H. Munroe and Lewis & Munroe, all of Syracuse, for appellant.

Frank Hopkins and D. Raymond Cobb, both of Syracuse, for respondent.

FOOTE, J. Plaintiff was injured on the evening of February 10, 1915, while attempting to pass over a crosswalk across North Geddes street on account of this walk being covered with loose pieces of snow and ice, upon which plaintiff stumbled and fell. It is alleged that the snow had been allowed to accumulate and remain on this crosswalk to a depth of five or six inches, and had become hard-packed from being tramped down by the use of the crosswalk and the use of the street; that on the afternoon of the same day of the accident, which occurred at about 7 o'clock, laborers in the employ of the city had chopped and loosened the ice from the walk and left it in great quantities thereon, covering said walk, in a negligent and dangerous condition, and without guard or notice; also that the city, its agents, servants, and employés, knew of the dangerous condition of said walk, having created the said condition. In his opening statement of the case to the jury, plaintiff's counsel said:

"On the day or the afternoon of February 10th, at that place, the city went up there and took picks and picked up and dug up the ice and snow that had accumulated, * * * so that they had taken off all the ice and snow that had accumulated there down to the bare sidewalk, and instead of throwing it out of the way or throwing it off to one side, out on the street or somewhere, they left it there piled up as they had broken it up. * * * They had changed it from the position where it was, and had broken it up the same as they would break up a cement sidewalk, and let the pieces of it right where they had loosened them. * * * Plaintiff was walking along in the line of this sidewalk * * * over this place where the ice and snow had accumulated and had not been disturbed, and he stepped over into this thrown-over or thrown-out place, where they had dug up these chunks and left them there in that condition, without seeing them or knowing they were there, and expecting the sidewalk to be in its natural condition, and one of these chunks on which he stepped tipped over with him in such a way as to throw him down."

On the pleadings and the opening of plaintiff's counsel defendant moved to dismiss the complaint, on the ground that no cause of ac-

tion is alleged, in that the complaint fails to allege the service of a written notice upon the commissioner of public works prior to the accident of the condition of this walk. This motion was granted.

[1] Plaintiff contends on this appeal that it was error to hold that plaintiff was under the necessity of alleging and proving written notice to the commissioner of public works, in view of the fact that the dangerous condition of the crosswalk which caused plaintiff's injury was created by the employés of the city, and that under such circumstances no written notice was required. It is first necessary to inquire what statute is applicable—whether the city charter or the Second Class Cities Law.

It is claimed on behalf of the city that section 250 of chapter 26 of the Laws of 1885, being the charter of the city, as amended by chapter 682 of the Laws of 1905, is the statute controlling and regulating actions of this kind. That section is not materially different from section 244 of the Second Class Cities Law (chapter 55, Laws 1909 [Consol. Laws, c. 53]), except in one particular. A part of the section of the city charter is:

"But no such action shall be maintained for damages or injuries to the person sustained in consequence of the existence of snow or ice upon any sidewalk, crosswalk or street, unless written notice thereof relating to the particular place was actually given to the commissioner of public works."

The similar provision in section 244 of the Second Class Cities Law is:

"But no such action shall be maintained for damages or injuries to the person sustained *solely* in consequence of the existence of snow or ice," etc.

Otherwise, the provisions of the two statutes, so far as applicable to this case, are substantially the same, if not identical. It will be necessary to refer to the history of these enactments to ascertain which is applicable and controlling.

Section 250 of the city charter, as originally enacted, did not limit the liability of the city for personal injuries due to defective sidewalks, except by the requirement that written notice of the injury must be given to the mayor or city clerk within six months after the injury happened, and the action must be brought within one year after the service of such notice. In 1898 was adopted the so-called "White Charter," being chapter 182 of the Laws of that year, entitled "An act for the government of cities of the second class." This act applied to the city of Syracuse, as it is a city of the second class. By section 461 of that act it was provided that the city should not be liable for injuries sustained in consequence of any street, sidewalk, or crosswalk being defective or out of repair, unsafe, or dangerous, or obstructed by snow or ice, or in any way or manner, in the absence of actual notice of the defective or unsafe condition to the commissioner of public works, or unless the defective condition had existed for at least 48 hours previous to the injury. In 1899, by chapter 581 of the Laws of that year, this section 461 was further amended, and again in 1904, by chapter 504 of the Laws of that year. In 1905, by chapter 682, an amendment was made to section 250 of the Syracuse city char-

ter, so as to make that section the same, in substance, and practically identical in form, with section 461 of the White charter, as amended by chapter 504 of the Laws of 1904. This was done, no doubt, to apply the White charter rule of liability with certainty to Syracuse, on the theory that the White charter might be held not to supersede the charter provision which remained unrepealed.

The amendment of 1905, therefore, has not the significance claimed for it of showing a legislative intent to except the city of Syracuse from the operation of the general law then applying to all cities of the second class, as would undoubtedly have been the case had the amendment prescribed for that city a rule different from that of the general law. I think, however, that no amendment of the Syracuse city charter was necessary, and that the provisions of the White charter did in fact apply and prescribe for the city precisely the same rules as are embodied in that amendment. This court held in Cahill v. City of Rochester, 96 App. Div. 557, 89 N. Y. Supp. 67, affirmed 183 N. Y. 581, 76 N. E. 1090, that section 461 of the White charter established a uniform rule covering the subject of notice of defects in sidewalks in cities of the second class and abrogated the sections of the charter of the city of Rochester upon the same subject. As the amendment to the city charter of 1905 does not show a legislative intent to except that city from the operation of the general law, we must, following the Cahill Case, hold that the general law applies to that city, and that as the general law has been amended since 1905, and no similar amendment has been made to the city charter, the controlling statute applicable to this case is the present section 244 of the Second Class Cities Law and not the city charter.

Chapter 182 of the Laws of 1898, being the so-called White charter, was entirely revised with its various amendments by chapter 473 of the Laws of 1906, which, in turn, was revised by chapter 55 of the Laws of 1909 into the "Second Class Cities Law" as it now exists. The rights of the parties to the present action are therefore controlled by section 244 of the last-mentioned act. I quote from that section the parts material to the questions in hand:

"No civil action shall be maintained against the city for damages or injuries to person or property sustained in consequence of any street, * * * sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or obstructed unless it appear that written notice of the defective condition * * * was actually given to the commissioner of public works, and that there was a failure or neglect within a reasonable time after the giving of such notice to repair, or remove the defect * * * complained of, or, in the absence of such notice, unless it appears that such defective * * * condition existed for so long a period that the same should have been discovered and remedied in the exercise of reasonable care and diligence. But no such action shall be maintained for damages or injuries to the person sustained *solely* in consequence of the existence of snow or ice upon any sidewalk, crosswalk or street, unless written notice thereof, relating to the particular place, was actually given to the commissioner of public works and there was a failure or neglect to cause such snow or ice to be removed, or the place otherwise made reasonably safe within a reasonable time after the receipt of such notice."

The word "solely" first appears in the statute in 1906.

[2-4] If this statute is applicable, plaintiff's complaint was rightly dismissed, as written notice to the commissioner of public works must be alleged, and it is not claimed that any written notice was given. But we are of opinion that the statute does not apply where the dangerous condition is produced by the city itself through its employés in the department of public works. Such was the rule in respect to notice to the city prior to the adoption of the White charter in 1898. Turner v. City of Newburgh, 109 N. Y. 301, 16 N. E. 344, 4 Am. St. Rep. 453; Dillon on Municipal Corporations (5th Ed.) § 1717; Riddle v. Village of Westfield, 65 Hun, 432, 20 N. Y. Supp. 359; Twist v. City of Rochester, 37 App. Div. 307, 55 N. Y. Supp. 850, affirmed 165 N. Y. 619, 59 N. E. 1131; Wilson v. City of Troy, 135 N. Y. 96, 32 N. E. 44, 18 L. R. A. 449, 31 Am. St. Rep. 817; Stedman v. City of Rome, 88 Hun, 279, 34 N. Y. Supp. 737. We must assume that this rule was known to the Legislature. It undoubtedly had power to change it, and exempt municipal corporations absolutely from liability for defects in streets due to negligence of its servants. MacMullen v. City of Middletown, 187 N. Y. 37, 79 N. E. 863, 11 L. R. A. (N. S.) 391. It is there said for the court by Judge Gray:

"It is by force of the special or statutory charter that municipal corporations come under a liability for a breach or neglect of corporate duties imposed, which is enforceable by every individual interested in their performance."

Neither the present statute nor any earlier one that we know of in express terms forbids an action where the street defect was caused by the city itself. In Sprague v. City of Rochester, 159 N. Y. 20, 53 N. E. 697, it was said by Judge Vann, speaking of a similar statute:

"A statute which creates a new rule, unknown to the common law, for the protection of a city against its own citizens, should be construed strictly against the city and liberally in favor of the citizen."

A strict construction of the present statute against the city requires us to apply to it the rule of Wilson v. City of Troy, and to hold that it does not apply to require written notice to the commissioner of public works of street defects created by employés in his department as a prerequisite to an action against the city. This rule of construction prevails elsewhere. Dillon on Municipal Corporations (5th Ed.) § 1712. Hughes v. City of Fond du Lac, 73 Wis. 380, 41 N. W. 407; Salem v. Webster, 192 Ill. 369, 61 N. E. 323; Atlanta v. Buchanan, 76 Ga. 585; Carstesen v. Stratford, 67 Conn. 428, 35 Atl. 276. It seems not to prevail in Massachusetts. Hadden v. City of Somerville, 197 Mass. 480, 83 N. E. 1105; Hitchcock v. City of Boston, 201 Mass. 299, 87 N. E. 470.

[5] We are also of opinion that, if the facts alleged by plaintiff are proved, there is a question of fact to be passed upon by a jury, viz.: Was the city negligent, through its employés in the department of public works, in breaking into pieces the snow and ice on the crosswalk where plaintiff was injured, and leaving the broken pieces on the walk in such condition as to be likely to cause injury to pedestrians? Of

course, if the ice, when broken up, was no more dangerous to pedestrians than before, the city cannot be held liable for negligence.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, LAMBERT, J., in result only.

