JOSEPHINE G. McCARTHY, Respondent, v. THE CITY OF FULTON, Appellant.

Fourth Department, March 13, 1918.

Municipal corporations — city of Fulton — liability for injuries caused by accumulated ice and snow — interference by city with natural flow of drainage waters — when notice to city not prerequisite to action — nuisance created by city in public streets.

Since it has been held by the Appellate Division that a provision of a city charter, similar to that contained in the charter of the city of Fulton, which provides in substance that no action for damages sustained in

consequence of the existence of snow and ice upon sidewalks and streets can be maintained unless written notice relating to the particular streets was actually given to the board of public works and there was a failure to cause such snow or ice to be removed, etc., is inapplicable in a case where the city itself, through its own employees, creates the dangerous condition which causes the accident, it was proper for the trial court to submit the liability of said city to the jury where it clearly appears that the city, by its pavements and curbs, had worked a diversion of surface waters to a certain street where they froze causing the injury to the plaintiff, it further appearing that the same condition had existed at the same place during two or three previous winters.

Although the city might not be liable if the drainage of ordinary surface waters froze on said street, it may be held liable for gathering together the surface waters of a park and discharging them upon said street where they would not naturally flow. In the latter case it is the duty of the city to see that such drainage does not produce a nuisance in the street dangerous to pedestrians.

Under the circumstances the city cannot escape liability because during a week the weather conditions made said waters alternately freeze and thaw on said street, for the city brought upon the street waters which did not naturally belong there.

APPEAL by the defendant, The City of Fulton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oswego on the 21st day of May, 1917, upon the verdict of a jury for $3,500, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*William S. Hillick*, for the appellant.

*R. J. Pendergast* [*Piper & Pendergast*, attorneys], for the respondent.

FOOTE, J.:

Plaintiff has recovered a verdict for personal injuries because she slipped and fell upon a crosswalk on Academy street across Second street in the city of Fulton. The jury has found that the ice upon this crosswalk was dangerous to pedestrians, that it was produced or caused by the city itself by causing the surface waters of a city park of four or five acres to be gathered together and discharged into Academy street, which is a paved street, and permitted to flow down to the point of the accident at Second street in such volume as

in winter weather to produce an icy condition at and near this crosswalk, so dangerous to pedestrians as to be a nuisance.

There have been two former trials of this action. On the first trial a verdict was rendered in favor of the plaintiff. The justice presiding set aside the verdict upon defendant's motion and made the following memorandum: "Under section 230 of the charter of the city of Fulton, and *MacMullen* v. *City of Middletown* (187 N. Y. 37), I am compelled to set aside the verdict and grant a new trial."

Plaintiff appealed here and we affirmed the order setting aside the verdict (167 App. Div. 955), but we wrote no opinion. Upon the next trial, the justice presiding directed a nonsuit upon the plaintiff's opening, on the theory that this court had held that the action could not be maintained because of section 230 of the charter of the city of Fulton, being chapter 63 of the Laws of 1902, as amended by chapter 630 of the Laws of 1907. That section contains the following: "But no such action shall be maintained for damages or injuries to the person sustained solely in consequence of the existence of snow or ice upon any sidewalk, crosswalk or street, unless written notice thereof, relating to the particular place, was actually given to the board of public works and there was a failure or neglect to cause such snow or ice to be removed, or the place otherwise made reasonably safe within a reasonable time after the receipt of such notice." Plaintiff appealed here from the nonsuit and we reversed the judgment and ordered a new trial. The case is reported on that appeal in 175 Appellate Division, 293.

Intermediate these two appeals, we decided the case of *Minton* v. *City of Syracuse* (172 App. Div. 39) in which we held that a similar statutory provision applicable to Syracuse was inapplicable to a case where the city itself, through its own employees, creates the dangerous condition of snow and ice which causes the accident. In that case the city employees went onto a crosswalk and dug up the hard-packed snow and ice into loose chunks and left it in that condition, whereby the plaintiff in that case was injured. The ground on which we reconciled our decision on the first appeal with our decision on the second was that the evidence on the first trial was not, in our opinion, sufficient to support a finding that the city

Fourth Department, March, 1918.    [Vol. 182.

itself had created the dangerous condition. The claim was that the city had constructed gutters and drainage pipes by which the surface waters of a city park four or five acres in extent were collected together and discharged into the gutter of Academy street and flowed down to the corner of Second street across the crosswalk where plaintiff was injured, and at that point in winter these waters froze and formed a sheet of ice covering half the width of the street and completely covering the crosswalk at that point, thus creating an artificial condition dangerous in character to pedestrians in the winter time, but we were of the ·opinion that the evidence did not justify a finding that the city had thereby diverted this water from the place where it naturally had run, and there was testimony that these surface waters from the park had run down on the side of Academy street before any gutters or pavements had been constructed by the city.

On the present trial the testimony has clearly established that such was not the case, but these surface waters flowed mainly down across Third street and down natural gulleys existing below Third street, and so across Second street to the river, and that the city pavements and curbs in Third street and Academy street had worked a diversion of the waters into Academy street. So on the present trial it was left to the jury to say whether this diversion had resulted in producing a dangerous condition at the point where plaintiff fell, so dangerous as to constitute a nuisance. It appeared that the same condition which existed at the time plaintiff was injured had existed during two or three previous winters; that it was not produced by any stopping up of the catch basin into which these waters would have discharged but for the formation of the ice there.

There can be no doubt, we think, that the trial judge was entirely correct in the theory on which he left the case to the jury, provided we were right in our former decision. He simply followed our decision.

The first point urged for reversal is that the accumulation of ice was natural and inherent to the plan of highway construction and no liability can be based thereon.

We think this position would be sound as regards any plan for the drainage of the ordinary surface waters of Academy

street, but that the city cannot thus escape liability for gathering together the surface waters of the park and discharging them along the side of Academy street where they would not naturally flow. If the city sees fit to bring into Academy street a considerable volume of surface water from this park, I think it is in duty bound to take care of it in such a way that it will not produce a nuisance in that street dangerous to pedestrians.

The second point is that the failure by the city to remedy the slippery and icy condition at the place of the accident was not negligence. This on the theory that the condition had existed little more than a week during freezing weather, and that the weather conditions were constantly producing freezing and thawing at that point.

Very likely there might be something in this point if the water that was there freezing and thawing was only what naturally belonged there, but we think it is not sound if the city brings there waters which do not naturally belong there, and which the city knows or should know will produce a dangerous condition in freezing weather.

The other points have already been passed upon in our previous decision.

The judgment and order appealed from should be affirmed, with costs.

All concurred; DE ANGELIS, J., not sitting.

Judgment and order affirmed, with costs.