JACOB THOMANN, Appellant, v. THE CITY OF ROCHESTER, Respondent.

Fourth Department, November 12, 1930.

*Charles S. Gordon,* for the appellant.

*Clarence M. Platt* [*Charles B. Forsyth* of counsel], for the respondent.

TAYLOR, J. The action is for a permanent injunction and for incidental damages. The city acquired lands immediately south and east of plaintiff's property and began dumping refuse, garbage, etc., upon it. This began as early as 1924, and continued up to 1928. On July 19, 1928, plaintiff filed a notice of claim and later a notice of intention to sue under section 632 of the Rochester City Charter. He commenced his action December 8, 1928. Dumping had been discontinued and no inconvenience was being caused for some considerable period before the action was started. The equity phase of the case, so far as the future is concerned, requires no discussion. An injunction has been granted, as prayed for, from which the city does not appeal. The judgment gave plaintiff (in addition to the injunction) costs, an additional allowance of costs and no damages, the learned trial court saying in its opinion that in the state of the proof nominal damages only could be given and for a period no longer than the thirty days immediately preceding July 19, 1928 (the date of filing the claim). The plaintiff alone appeals from everything but the injunction, which means from the trial court's holding that he was entitled to damages for the thirty-day period only.

The question presenting itself to us is whether compliance with section 632 of the Rochester City Charter (Laws of 1907, chap. 755) was an essential preliminary to bringing this action, and to what extent it applies, it having been invoked.

Section 632 of the Rochester City Charter reads as follows: " All claims against the city for damages or injuries to person or property, invasions of personal or property rights of every name and nature whatsoever, whether casual or continuing, continuing and continuous trespasses, continuing and continuous invasions of property, continuing and continuous invasions of property rights, and all other claims for damages or injuries to persons or property, arising at law or in equity, and enforceable or sought to be enforced at law or in equity, alleged to have been caused or sustained in

whole or in part by or because of any misfeasance, nonfeasance, negligence, omission of duty, wrongful act, fault or neglect on the part of the city or any of its agents, officers or employees, must be presented to the common council and the corporation counsel, in writing, within thirty days after such damages, or injuries to persons or property were sustained. Such writing must state the time when, the place where and the circumstances under which the damages or injuries were sustained and the particular cause thereof; it must also state so far as it is then practicable, the nature and extent of the damages or injuries; it must also state the place of residence of the claimant by street and number, and if there be no street or number, it must contain such statement as will disclose the place of residence; and all such claims must be verified by the oath of the claimants; and if it is intended to commence an action on such claim, notice of such intention, containing the amount demanded and the time and place of the damages or injuries must also be served on the corporation counsel within six months after such damages or injuries were sustained. No action may be maintained for damages or injuries to persons or property caused or sustained as aforesaid unless the claim therefor is presented to the common council and corporation counsel within thirty days and notice of intention is served upon the corporation counsel within six months, and the action is commenced within one year after such damages or injuries were sustained, but no such action may be brought until three months have elapsed after the presentation of the claim to the common council and the corporation counsel. This section applies to claims of infants and all other persons. The place of trial of all actions or proceedings against the city or its boards or officers, shall be in the county of Monroe."

This charter section was intended to be and is of broad scope. In letter, at least, it covers actions at law and in equity, continuing and continuous invasions of property rights, all claims for damages or injuries to persons or property, misfeasances, wrongful acts, nonfeasances, negligence and omission of duty.

The proof here shows — as do also the findings of fact and the conclusions of law — that the city property involved was regularly and continuously used as a dumping ground for garbage and all sorts of refuse, causing nauseous odors, gases, fumes and vapors to be constantly wafted over the nearby territory and into plaintiff's greenhouses, causing rats to travel from the dump to and upon plaintiff's premises and into his greenhouses, and that fires upon the dump caused plaintiff damage from smoke and ashes. The conclusions of law also state that the defendant city thus created and maintained a nuisance, failed to use necessary precautions to

avoid creating and maintaining a nuisance, and " had due and sufficient notice of the condition of said city dump, causing the said damages to the plaintiff." This was the " creation of the dangerous condition * * * with the consciousness and understanding on the [city's part] that it was creating it." (*Herman* v. *City of Buffalo*, 214 N. Y. 316, 320.) It is evident that the above-recited transactions of the defendant upon this dumping ground and the conditions brought about, resulted in a nuisance both " continuing and continuous," as distinguished from the " intermittent and recurring " results mentioned in the opinion in *Meruk* v. *City of New York* (223 N. Y. 271, 276). And there is evidence of serious damage to plaintiff's property, continuing over a period of several years.

A statute of broad scope restricting the right to sue a municipality may apply to equitable or to common-law actions. (*Reining* v. *City of Buffalo*, 102 N. Y. 308; Knox v. *Mayor, etc., of New York*, 55 Barb. 404; *Squaw Island Freight & T. Co., Inc.,* v. *City of Buffalo*, 133 Misc. 64.) Whether or not or to what extent section 632 was applicable to the instant case, it was invoked by plaintiff. In so doing, plaintiff neither waived any rights nor estopped himself from making any claims. Plaintiff has obtained all the equitable relief desired, and from this determination the city has not appealed. As a matter of fact, the city ceased to use this land as a dump months before this action was started. The only remaining moot question in the case relates to the claim for damages. All else is disposed of.

It is a long-established rule of law that when a municipality creates within its limits a physical condition dangerous to citizens, and maintains it or negligently continues it as such, preliminary notice of the physical situation to the municipality, either actual or constructive — as a basis for a finding of negligence — is not essential to the successful maintenance of an action for damages caused by the dangerous condition. Creation and maintenance import knowledge and notice becomes a supernumerary. (*Wilson* v. *City of Troy*, 135 N. Y. 96; *Twist* v. *City of Rochester*, 37 App. Div. 307; affd., 165 N. Y. 619; *Minton* v. *City of Syracuse*, 172 App. Div. 39.) A fortiori, this rule applies in cases of nuisance. Then this question arises: What bearing, if any, has municipal causation and maintenance in a given case upon the efficacy of a regulation put into effect by the municipality in restriction or limitation of the right of an individual to sue it?

With respect to results brought about in the exercise of " governmental " functions as distinguished from " ministerial " or " private " functions — *i. e.*, in instances when municipalities act

as a part of the government (which cannot be sued without its consent) — the Legislature having power to grant or deny remedies by private action against municipalities, may affix conditions as it wills, either directly or through municipal charters. (*MacMullen* v. *City of Middletown*, 187 N. Y. 37, 41–45.). But when municipalities take it upon themselves to act ministerially or as a private corporation or person would act — perhaps for their own advantage, or variously in the interest of their citizens — they are subject to suit under the common law and under the Constitution (N. Y. Const. art. 8, § 3) for injury to person or property of private persons. And whatever power might rest in the municipality to circumscribe the right to sue for damages thus caused is always subject to the constitutional rights of the person injured. (*Barry* v. *Village of Port Jervis*, 64 App. Div. 268, 279–282.) The collection of ashes, garbage and other refuse and disposing of them as this defendant did, is a private rather than a governmental function (*Quill* v. *Mayor*, 36 App. Div. 476); and this plaintiff, in bringing and carrying on this action, is entitled to the benefit of constitutional guaranties. " A statute which creates a new rule, unknown to the common law, for the protection of a city against its own citizens, should be construed strictly against the city and liberally in favor of the citizen." (*Sprague* v. *City of Rochester*, 159 N. Y. 20.)

According to the proof and the findings in this case, defendant caused the nuisance condition and knew about its effects. It was, therefore, bound to know that plaintiff was constantly being injured and damaged and that he ought to — even if he were not about to — sue at any time. It knew all the time that the nuisance conditions never should have been created, that they should cease and that reparation should be made. Reason for being entitled to notice, viz., opportunity to investigate and adjust, did not exist; it was merged in defendant's full knowledge.

But in addition to all this, the effects of the nuisance condition were all the time continuing, continuous, constant — not recurrent and intermittent. Plaintiff's cause of action could not reasonably have been cut up or measured off into thirty-day periods. In our opinion, the thirty-day limitation provision of section 632 was not enacted to cover such a situation as that into which plaintiff was injected. If the legislative intent in this regard was as claimed by respondent, the charter section to that extent is unconstitutional. (*Gilbert* v. *Ackerman*, 159 N. Y. 118, 124.) It deprives plaintiff of property without due process of law. (N. Y. Const. art. 1, § 6.) Plaintiff is entitled to " a reasonable opportunity to invoke the aid of the courts; * * * a right [in the Legislature] is not a power arbitrarily to destroy a right vesting in the plaintiff."

*(Barry* v. *Village of Port Jervis, supra.)* Plaintiff has sufficiently raised these questions by requests to find and notice of exceptions filed and served. (Civ. Prac. Act, § 439; *LeGendre* v. *Scottish Union & Nat. Ins. Co.,* 183 N. Y. 392, 393.)

The judgment, so far as appealed from, should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

All concur, except CROSBY, J., who dissents and votes for affirmance. Present — SEARS, P. J., CROUCH, TAYLOR, THOMPSON and CROSBY, JJ.

Judgment, so far as appealed from, reversed on the law and a new trial granted, with costs to the appellant to abide the event.