Emmett LUNDAY, Jr., a minor, by his father and next friend, Emmett Lunday, Sr., Appellant,

v.

Henry VOGELMANN et al., Appellees.

No. 56088.

Supreme Court of Iowa.

Dec. 19, 1973.

Raymond O. Snook, of Minnich & Neu, Carroll, for appellant.

P. D. Furlong, Sioux City, for appellee Denison Community School District.

Robert Kohorst, of Louis, Moore & Kohorst, Harlan, for appellee City of Denison.

McCORMICK, Justice.

. The issue in this appeal is whether the notice of claim requirement of Code § 613A.5, relating to tort liability of governmental subdivisions, is unconstitutional as a denial of equal protection of the law. Trial court held it is not. We dismiss the appeal in part and affirm in part.

Plaintiff Emmett Lunday, Jr., is a minor who brings this action by his father Emmett Lunday, Sr. Defendant Henry Vogelmann is a school teacher employed by defendant Denison Community School District. The accident involved is alleged to have happened on property owned by the school district and leased to defendant City of Denison, Iowa.

Plaintiff's petition, filed July 5, 1972, was in two divisions. For cause of action against defendants Vogelmann and school district, plaintiff alleged in Division I of his petition that on September 5, 1969, he was severely injured when run over by a lawnmower while chasing a ball during a physical education class supervised by Vo-

gelmann; he alleged that negligence of those defendants in four respects relating to supervision and safety precautions proximately caused his injury and damages. For cause of action against the City, plaintiff alleged in Division II of this petition that his injury and damages were proximately caused by negligence in three respects of the City's employee in operation of the lawnmower.

In response to a motion for more specific statement plaintiff amended his petition to acknowledge he did not serve notice of his claim on either the school district or the City within 60 days after his injury. In their answers the school district and City admitted the date of injury and plaintiff's failure to give notice of claim and affirmatively alleged the action is barred by failure to give such notice or to commence the action within three months of the date of injury as required by Code § 613A.5. By reply plaintiff alleged the notice requirement of Code § 613A.5 is unconstitutional. Subsequently plaintiff moved for adjudication of law points under rule 105, Rules of Civil Procedure, to secure an adjudication of the constitutionality of that notice requirement.

Trial court sustained the constitutionality of the statute and dismissed plaintiff's petition against the school district and City. This appeal by plaintiff followed.

■ I. *Finality of the judgment.* Under rule 331, R.C.P., only final judgments or decisions may be appealed as a matter of right. Interlocutory appeals may be taken only with permission. Rule 332, R. C.P. We have no jurisdiction to entertain an appeal where no final judgment was entered and no permission to appeal from an interlocutory order was obtained. Johnson v. Iowa State Highway Commission, 257 Iowa 810, 812, 134 N.W.2d 916, 917 (1965).

■ Here the case was dismissed as to the school district and City but not as to Vogelmann. We discussed the issue of finality of a judgment dismissing an action against one or more but not all defendants in Bennett v. Ida County, 203 N.W.2d 228 (Iowa 1972). Based upon what is said there we believe the claimed liability of the school district and Vogelmann is so closely related that the judgment dismissing the petition as to the school district is interlocutory. *Id.* at 232–234; Reuter v. City of Oskaloosa, 253 Iowa 768, 771–773, 113 N. W.2d 716, 718–719 (1962). But we believe the claimed liability of the City and Vogelmann is separated by a clear line of demarcation making the judgment dismissing the petition as to the City final. McGuire v. Cedar Rapids, 189 N.W.2d 592, 598 (Iowa 1971).

The appeal must be dismissed as to the school district. This of course makes no practical difference because we affirm the dismissal of the petition as to the City on the merits.

II. *Constitutionality of Code § 613A.5.* Plaintiff contends the notice provisions of Code § 613A.5 deny him equal protection of the law under Amendment 14 to the United States Constitution. He does not assert his minority tolled the notice requirement. That remains an open question under our statute. See Vermeer v. Sneller, 190 N.W.2d 389, 395–397 (Iowa 1971). Plaintiff relies upon his minority only in alleging that because Code § 613A.5 is unconstitutional, the applicable period of limitations is Code § 614.8 which extends the limitations in Code chapter 614 for a minor until one year after he reaches majority.

The sole issue for decision here is whether Code § 613A.5 does deny plaintiff equal protection of the law. That section is:

"613A.5 Limitation of actions. Every person who claims damages from any municipality for or on account of any wrongful death, loss or injury within the scope of section 613A.2 shall commence an action therefor within three months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the

alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. Failure to state the amount of compensation or other relief demanded shall not invalidate the notice; providing, the claimant shall furnish full information regarding the nature and extent of the injuries and damages within fifteen days after demand by the municipality. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. The time for giving such notice shall include a reasonable length of time, not to exceed ninety days, during which the person injured is incapacitated by his injury from giving such notice."

Plaintiff argues the statute denies him equal protection because it unreasonably puts victims of governmental torts in a different class than victims of private torts. Tort claims against governmental subdivisions are subject to the special notice requirement whereas tort claims against private persons are not.

■ The nature of the burden upon one attacking a statute on equal protection grounds depends upon whether the classification is one subject to close judicial scrutiny or traditional equal protection analysis. Since the classification here is not based upon sex, race, alienage or national origin and does not involve fundamental rights, it is subject to the traditional equal protection standard. See Frontiero v. Richardson, 411 U.S. 677, 681, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583, 589 (1973). Under that test the classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Id.* It does not deny equal protection simply because in practice it results in some inequality; practical problems of government permit rough accommodations; and the classification will be upheld if any state of facts reasonably can be conceived to justify it.

Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–502 (1970). The legislature has wide discretion in deciding classifications. Cedar Mem. Park Cem. Ass'n v. Personnel Assoc., Inc., 178 N.W.2d 343, 350 (Iowa 1970). Our view of the wisdom of the legislation is irrelevant. Peel v. Burk, 197 N.W.2d 617, 619 (Iowa 1972).

■ The purpose of the notice requirement of § 613A.5 is to provide a method for prompt communication of time, place and circumstances of injury so the municipality can investigate while facts are fresh. Norland v. Mason City, 199 N.W.2d 316, 318 (Iowa 1972). The basis for disparate classification of victims of governmental and private torts is explained in Sprung v. Rasmussen, 180 N.W.2d 430, 433 (Iowa 1970) as a condition placed by the legislature upon its abolition of sovereign immunity:

"Where, as here, the legislature has created a new right of action, it made a legislative judgment that the cause should be brought within a specified time. This difference doubtlessly arises from the fact the statute we are here interpreting is in derogation of sovereign immunity and that the legislature might, and did, properly restrict and limit the application of the statute."

We recognized the same legislative prerogative in relation to its abrogation of state tort immunity in Graham v. Worthington, 259 Iowa 845, 863–864, 146 N.W.2d 626, 638 (1966).

The fundamental motivation attributed to legislatures which have enacted such notice requirements is that where a governmental subdivision is involved the public has an interest it does not have as to claims against private persons in seeing prompt and thorough investigation of claims is made. This protects the public treasury from stale claims. Thomann v. City of Rochester, 230 App.Div. 612, 245 N.Y.S. 680 (1930). It permits prompt settlement of meritorious claims and facilitates

planning of municipal budgets. King v. Johnson, 47 Ill.2d 247, 265 N.E.2d 874 (1970). The notice requirement also ensures that notices reach the public officers with responsibility to deal with them and in many instances should enable such officers to remedy defects in far-flung municipal property before other persons are injured.

■ We are unable and unwilling to say § 613A.5 is patently arbitrary and bears no rational relationship to a legitimate governmental interest. Plaintiff has not met his burden to prove the statute is unconstitutional.

In addition to the authorities cited, support for this conclusion is found in other cases involving similar statutes. See Dias v. Eden Township Hosp. Dist., 57 Cal.2d 502, 20 Cal.Rptr. 630, 370 P.2d 334 (1962); McCann v. City of Lake Wales, 144 So.2d 505 (Fla.1962); Tonn v. City of Helena, 42 Mont. 127, 111 P. 715 (1910); Harris County v. Dowlearn, 489 S.W.2d 140 (Tex.Civ.App.1972); O'Neil v. City of Richmond, 141 Va. 168, 126 S.E. 56 (1925).

A contrary result was reached in Reich v. State Highway Department, 386 Mich. 617, 194 N.W.2d 700 (1972). There the Michigan court held a similar statute denied equal protection because in abrogating sovereign tort immunity its legislature manifested an intent that victims of private and public torts be placed on equal footing. In view of our legislature's enactment of § 613A.5 as part of the same act in which it created new rights for victims of municipal tortfeasors, we have no basis to follow that reasoning here. Sprung v. Rasmussen, supra.

Plaintiff's argument against § 613A.5 would more properly be addressed to the legislature than to us.

Appeal is dismissed as to the school district, and the case is affirmed as to the City.

Appeal dismissed in part and affirmed in part.

All Justices concur except REYNOLDSON, J., who dissents.

REYNOLDSON, Justice (dissenting).

Occasionally we should look up from our daily cut-from-pattern decision-making to note the long range effect of our activity on the fabric of justice. This case (latest of many involving § 613A.5, The Code, and its predecessor statute) in which we again deny a litigant his day in court, provides another occasion for such reflection.

I. Because this plaintiff cannot be readily relegated to one of the traditional pigeon-hole classifications sheltered by the equal protection clause, the majority holds this cause does not involve "fundamental rights."

I suggest nothing could be more "fundamental" than the right of reasonable access to courts to protect those inalienable rights possessed by all persons and recognized by both the United States and Iowa Constitutions. Thus the Iowa Constitution in its Bill of Rights, art. I, perceives,

"*Rights of Persons*. Section 1. All men * * * have certain inalienable rights—among which are those of *enjoying* and defending *life* and liberty, *acquiring, possessing and protecting property*, and pursuing and obtaining safety and happiness." (Emphasis supplied.)

In a similar vein, those who drafted Amendment 14 to the United States Constitution declared:

" * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It would plainly impinge on basic rights to deny reasonable opportunity for redress in court to one who through the wrongful act of another has been permanently disabled, with a consequent inability to enjoy life and to follow a gainful occupation in order to acquire and possess property. But

to hold only a portion of the persons so affected—those injured by the wrongful act of a municipality—must suffer the astonishing constraints of a 60-day notice statute, additionally denies those persons equal protection of the law.

The right of access to the courts in matters affecting "inalienable rights" surely rises to the same level as those other "fundamental rights" recognized by the United States Supreme Court. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to travel); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (marriage); Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (education); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation). The right of an illegitimate child to obtain wrongful-death damages arising from the death of his parent has been recognized among the *"basic civil rights"* we all enjoy. Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).

Persuasive on this point is what the Supreme Court said in Boddie v. Connecticut, 401 U.S. 371, 375–380, 91 S.Ct. 780, 784–787, 28 L.Ed.2d 113, 117–120 (1971):

"It is to courts, or other quasi-judicial official bodies, that we ultimately look for the implementation of a regularized, orderly process of dispute settlement. Within this framework, those who wrote our original Constitution, in the Fifth Amendment, and later those who drafted the Fourteenth Amendment, recognized the centrality of the concept of due process in the operation of this system. Without this guarantee that one may not be deprived of his rights, neither liberty nor property, without due process of law, the State's monopoly over techniques for binding conflict resolution could hardly be said to be acceptable under our scheme of things. * * *

" * * * Thus, this Court has seldom been asked to view *access to the courts* as an element of due process. The legitimacy of the State's monopoly over techniques of final dispute settlement, even where some are denied access to its use, stands unimpaired *where recognized, effective alternatives for the adjustment of differences* remain. * * *

\* \* \* \* \* \*

" * * * Early in our jurisprudence, this Court voiced the doctrine that '[w]herever one is assailed in his person or property, there he may defend,' Windsor v. McVeigh, 93 U.S. 274, 277, 23 L.Ed. 914, 915 (1876). * * *

" * * * What the Constitution does require is 'an *opportunity* * * * granted at a meaningful time and in a meaningful manner,' Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62, 66 (1965). * * *

\* \* \* \* \* \*

"[T]he right to a meaningful opportunity to be heard within the limits of practicality, *must be protected against denial by particular laws that operate to jeopardize it for particular individuals."* (Emphasis supplied.)

It may be conceded the *Boddie* court turned its decision on due process, a ground not raised by this plaintiff. But *Boddie* does confirm the fundamental nature of the right of access to the courts where basic values are at stake. The State cannot deny one a reasonable opportunity to litigate a matter seriously affecting his person or property unless it provides a recognized, effective alternative method for settlement of the dispute. It follows such access cannot be unreasonably constrained for a particular class of persons without also violating the equal protection clause. Republic Pictures Corporation v. Kappler, 151 F.2d 543, 547 (8 Cir. 1945), aff'd mem., 327 U.S. 757, 66 S.Ct. 523, 90 L.Ed. 991 (1946). And because this right (to seek redress in court) is also a "fundamental right," the doctrine of "close scrutiny" by the judiciary *is* applicable. See Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362,

12 L.Ed.2d 506 (1964). The usual presumption of constitutionality is reversed. The State's classification of those injured by the negligence of a municipality vis-a-vis those injured by the negligence of others is suspect and must be persuasively justified.

II. The justifications for unequal treatment we endlessly chronicle in these cases require us to forget what we learned as practicing lawyers, and know as jurists. The municipalities seldom budget for claim payments; they carry liability insurance as the statutes permit. See, e. g., §§ 332.-3(20), 347.14(9), 517A.1, The Code. Ordinarily the insurance carrier's investigators are on the scene before the injured person has secured professional assistance.

Most lawyers have experienced the personal trauma of consultation with the naive person who received the solicitous attention of the municipality's insurance representative during the 60 days following his injury and whose claim was rejected after no statutory notice was given the municipality. Similar unsurprising circumstances which the plaintiffs pled, but had no opportunity to prove, have surfaced frequently in the cases reaching us. See Vermeer v. Sneller, 190 N.W.2d 389 (Iowa 1971) (within the 60-day period, the injury was reported to school authorities and its insurance agent had prepared a written report of the time, place, circumstances and extent of plaintiff's injuries); Gruener v. City of Cedar Falls, 189 N.W.2d 577 (Iowa 1971) (plaintiff who fell from hospital bed alleged city hospital and its administrator made her medical records available to the liability insurer but not to her); Halvorson v. City of Decorah, 258 Iowa 314, 138 N.W.2d 856 (1965) (within 60 days insurance carrier investigated and through an attorney took a written statement from plaintiff concerning the accident); Heck v. City of Knoxville, 249 Iowa 602, 88 N.W.2d 58 (1958) (defendant city's liability insurance carrier took plaintiff's written statement in her hospital room within a week from the date of her injury).

Knowledge of a municipality-caused injury usually reaches the municipal managers before any formal notice. In Iowa, municipalities are not headless monstrosities. It is a hallmark of our still rural-oriented society—often scorned by elitists but nonetheless extant—that we know the misfortunes of our neighbors. Modern communication facilities are everywhere; news media coverage is sophisticated and alert.

The managers of our municipalities are not indifferent, they are concerned community citizens. It is inconceivable those connected with city government did not immediately know of the destruction of plaintiff's home by the explosion and fire described in Goodwin v. City of Bloomfield, 203 N.W.2d 582 (Iowa 1973). Nor can it be reasonably assumed the city government in American States Insurance Co. v. City of Dubuque, 186 N.W.2d 601 (Iowa 1971) did not know at once of the property destruction resulting from its failure to provide water pressure for its fire mains.

An analysis of the recent cases in which we have denied the plaintiff his day in court discloses almost all the petitions contain allegations indicating the municipality's timely knowledge of the damage or injury. See Flynn v. Lucas County Memorial Hospital, 203 N.W.2d 613 (Iowa 1973) (plaintiff "come up out of bed pretty quick" when nurse "jerked the needle out," and complained from then on of pain at site of injection); Goodwin v. City of Bloomfield, supra (destruction of plaintiff's home by explosion and fire, timely notice given which did not contain all the statutory information); Norland v. Mason City, 199 N.W.2d 316 (Iowa 1972) (timely notice given which did not contain all the statutory information); American States Insurance Co. v. City of Dubuque, supra (failure to furnish fire main pressure resulting in serious losses, timely notice given which did not contain all the statutory information).

In the case *sub judice*, it is more than likely the school and the city were both

soon aware this plaintiff, a small boy, was seriously injured when run down by the city's lawnmower on the school playground.

Even less valid is the frequently-encountered argument a short-notice statute reduces the number of frivolous or fraudulent claims made against municipalities. Applicable is a statement from Delorme v. Pierce, 353 F.Supp. 258 (D.Or.1973). There a three-judge federal court (holding a state's "civil death" statute would violate a prisoner-felon's equal protection rights if employed as a defense to a prisoner's state-court attempt to litigate his workmen's compensation award) declared, 353 F.Supp. at 260,

"The State cannot reduce frivolous litigation by excluding from court an entire class of litigants because some members of the class may assert improper claims. Much less onerous ways are available to protect the judicial process. See Boddie v. Connecticut, 401 U.S. 371, 381–382, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)."

The advantages of timely investigation ordinarily lie with the municipality's insurer, not the injured plaintiff. The municipality is protected from stale claims in the same manner as the private sector, that is, by the applicable statute of limitations. There is no good reason for it to enjoy an additional protection. See Farrall, Delay in Notice of Tort Claims Against a Government Agency, 20 Clev.St.L.Rev. 23, 30 (1971).

Probed in the light of common knowledge and a cross-section of the cases reaching this court, those stereotyped justifications, employed to buttress denial of equal protection, are seen to be without basic merit.

III. Nor am I persuaded, as is the majority, that § 613A.5, whose uninspired predecessors were among our limitation statutes since 1888, was in 1968 suddenly transformed as a part of a vehicle for delivering gratuitous privileges to tort victims through a partial abolition of sovereign immunity, and must therefore be accorded greater deference than any other suit-limiting statute. In at least two recent decisions we have applied to § 613A.5 the ordinary rules of restriction which apply to all limitation statutes generally. Vermeer v. Sneller, supra; Sprung v. Rasmussen, 180 N.W.2d 430 (Iowa 1970).

Against that historical backdrop, majority's attempt to distinguish Reich v. State Highway Dept., 386 Mich. 617, 194 N.W.2d 700 (1972) seems forced. *Reich* plainly pinpoints the capacity of the notice statute to arbitrarily divide a natural class, i. e., all tort-feasors, into two differently treated subclasses: private tort-feasors to whom no notice of claim is owed and municipal tort-feasors to whom notice is owed. Further arbitrarily classified, as *Reich* indicates, are victims of municipal negligence who must meet the requirement and victims of private negligence who are subject to no such requirement.

Directly in point is the following from Turner v. Staggs, 89 Nev. 230, 510 P.2d 879, 882 (1973):

"* * * [W]e believe that the notice of claim requirements found in NRS 244.245 and NRS 244.250 as applied to governmental torts deny equal protection guaranteed by the United States Constitution.

"Within our present scheme of government, claim statutes serve no real beneficial use * * * but they are indeed a trap for the unwary."

See also Zipser v. Pound, 69 Misc.2d 152, 329 N.Y.S.2d 494 (White Plains City Ct. 1972).

Still another more invidious discrimination inheres in § 613A.5. Ordinarily the affluent and educated tort victim has a retained or family attorney. His attorney may ethically—and probably does—come

forward to inform his client of the notice requirement. Iowa Code of Professional Responsibility for Lawyers, Ethical Canon 2–3. It is the poor, uneducated tort victim, without counsel and unacquainted with lawyers, who naively assumes he will be compensated and unknowingly permits the notice time to lapse.

Such claim statutes are not merely without beneficial purpose, they impede the law's progress toward a goal of uniform and even-handed justice. We articulated that concept well in Frost v. Des Moines Still College, 248 Iowa 294, 306, 79 N.W.2d 306, 314 (1956):

"* * * Justice Rutledge, in President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 130 F.2d 810, 827, pointed out that 'the law's emphasis ordinarily is on liability, not immunity, for wrongdoing', and we may also observe that public policy abhors the classification and inference brought about by so-called 'protected negligence.' We strive to eliminate it—not foster and encourage it."

Almost ten years ago four members of this court, dissenting, branded the court-imposed concept of governmental immunity as "evil," "unjust," and "unsupported by any valid reason." They wrote, "The law should be progressive; it should advance with changing conditions." That dissent referred to the same arbitrary classifications among tort victims here discussed. Boyer v. Iowa High School Athletic Assn., 256 Iowa 337, 349, 127 N.W.2d 606, 613 (1964). Ten year's continued change in conditions has only demonstrated more clearly the evil of the doctrine those dissenters deplored. The vestige of governmental immunity represented by § 613A.5 is not more constitutional or just because it reposes in a statute rather than in case law.

IV. Under § 613A.5, the injured person who is run down by a negligently-operated municipal truck loses his basic right to redress in court unless by chance he knows he must file suit in 90 days or notify the municipality in 60 days. The person negligently run down by a private truck has no such burdens: he merely brings his cause of action within two years. Section 614.-1(2), The Code. The unequal treatment resulting from the application of those statutes may well invoke the provisions of the Iowa Constitution, art. I, § 6, that,

"All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

See Chicago & N. W. Ry. Co. v. Fachman, 255 Iowa 989, 125 N.W.2d 210 (1963); Collins v. State Board of Social Welfare, 248 Iowa 369, 81 N.W.2d 4 (1957); see also Kluger v. White, 281 So.2d 1 (Fla. 1973). While plaintiff in this case does not directly rely on the Iowa constitutional provision, it should move us to a proper consideration of the applicability of Amendment 14.

These defendants have not carried their burden to persuasively justify the impermissible classifications spawned by § 613A.-5. That statute invidiously discriminates, violating the equal protection clause of Amendment 14. I question whether we fulfill our constitutional duty and historic role by continuing to stoically endure these cases while we point a silent finger toward the legislature.

I would reverse.