Rosemary DeHUSSON, as guardian, natural mother of the person and personal representative for the Intestate Estate of Walter DeHusson, a minor, Appellant,

v.

CITY OF ANCHORAGE, Tunnel Bay Construction Company, Stephen and Sons Construction Company and John Doe Corporation, Appellees.

No. 2996.

Supreme Court of Alaska.

July 28, 1978.

Paul L. Davis and Michael W. Sewright, Edgar Paul Boyko & Associates, P. C., Anchorage, for appellant.

Kenneth P. Jacobus, James M. Powell and Gordon J. Tans, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees.

Allan E. Tesche, Municipal Attys' Ass'n, Anchorage, amicus curiae.

Murphy L. Clark, Anchorage, for City & Borough of Juneau, amicus curiae.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

RABINOWITZ, Justice.

The central issue in this appeal involves a challenge to the notice of claims for injuries section of the Anchorage City Charter which provides, in part:

(a) The city shall not be liable in damages for injury to person or property by reason of negligence of the city, unless, within one hundred twenty (120) days after such injury occurs, the person damaged or his representative causes a written notice to be served upon an officer of the city upon whom process may be served by law. Such notice shall state that such person intends to hold the city liable for such damages and shall set forth substantially the time and place of the injury, the manner in which it occurred, the nature of the act or defect complained of, the extent of the injury so far as known, and the names and addresses of witnesses known to the claimant.

(b) No person shall bring action against the city for damages to person or property arising out of any of the reasons or circumstances aforesaid, unless such action is brought within the period prescribed by law, nor unless he has first presented to the clerk a claim in writing and under oath, setting forth specifically the nature and extent of the injury and the amount of damages claimed. The clerk shall refer the claim to the city manager, who must promptly present such claim to the council for action.[1]

Appellant Rosemary DeHusson, as representative of the estate of Walter DeHusson, instituted a wrongful death action in the superior court against appellee City of Anchorage and several construction companies for the death of her minor son, Walter, who drowned when swept underwater through an open spillway into a large culvert which was part of the Westchester Lagoon recreation project under construction by the city of Anchorage and its contractors.

No notice of claim as required by the Anchorage City Charter was given to the municipality within the prescribed 120-day period. Subsequent to appellant's commencement of the superior court action, the municipality moved for summary judgment upon the ground that appellant had not complied with the notice of claim requirements of Section 1.10 of the Charter of the City of Anchorage. The superior court granted the motion for summary judgment and this appeal followed.[2]

Our recent opinion in *Johnson v. City of Fairbanks,* 583 P.2d 181 (Alaska, 1978) is dispositive of the instant case; accordingly, it is unnecessary to reach the issues argued by appellant. In *Johnson,* we concluded that a similar notice of claims provision in the Fairbanks City Charter[3] was invalid

---

**1.** Section 1.10, Anchorage City Charter. Subsections (c) and (d) of this section read:

(c) Failure to give notice of injury or present a claim within the time and in the manner provided shall bar any action upon such claim.

(d) This section shall not be deemed to waive any defense of immunity which the city may have from claims for damages arising out of negligence, but shall apply in all cases where such defense is not available to the city.

The applicable state statute of limitations is found in AS 09.10.070 and provides:

No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or right of another not arising on contract and not specifically provided otherwise . . . unless commenced within two years.

**2.** Appellant seeks to raise three issues in this appeal:

(1) Whether Section 1.10 of the Anchorage City Charter, providing for a 120-day period within which a claimant must supply the city with written notice of his or her tort claim as a condition precedent to holding the city liable, violates the equal protection clauses of the United States and Alaska constitutions;

(2) Whether the superior court was correct in ruling that the city was not estopped to raise the defense of failure to give notice pursuant to Section 1.10;

(3) Whether Section 1.10 of the City Charter of Anchorage, regarding "injury," is applicable to cases involving death.

A few states recently have agreed with appellant's equal protection argument and have invalidated notice of claims provisions on the ground that equal protection guarantees would be violated by dividing tort victims into two subclasses: the victims of governmental negligence who must meet notice requirements and the victims of private negligence who are subject to no such requirements. *See Reich v. State Highway Dep't,* 386 Mich. 617, 194 N.W.2d 700 (1972); *Turner v. Staggs,* 89 Nev. 230, 510 P.2d 879 (1973), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973); *Hunter v. North Mason High School,* 85 Wash.2d 810, 539 P.2d 845 (1975). The notice of claim provisions considered by these courts were contained in state statutes rather than in municipal charters or ordinances. Criticism of the *Reich* opinion can be found in Copperrider, *The Court, the Legislature, and Governmental Tort Liability In Michigan,* 72 Mich.L.Rev. 187, 272 (1973). Other courts have upheld notice of claims provisions on the ground that a rational basis exists for the legislative classifications created by the notice provisions and that the sovereign's waiver of governmental immunity was only conditional or partial. *See* Note, *Notice of Claim Provision: An Equal Protection Perspective,* 60 Cornell L.Rev. 417, 431 (1975). For the reasons stated in this opinion, we need not reach appellant's constitutional argument.

**3.** *See Johnson v. City of Fairbanks,* 583 P.2d 181 at 182, n. 3, (Alaska, 1978).

because impliedly prohibited by the two-year statute of limitations:

> The two-year statute of limitations reflects a state policy that a plaintiff's commencement of action is the affirmative step necessary to assure that his assertion of a claim is timely. The uniform limitations period allows every victim of tortious conduct in Alaska, regardless of where he resides and regardless of whether the alleged tortious conduct was by a governmental unit or not, to commence an action for damages within two years without complying with any other time limit. We think the notice of claims provision in the Fairbanks City Charter seriously impedes implementation of this statewide legislative policy and therefore is impliedly prohibited.

> As we noted in *Maier v. City of Ketchikan,* 403 P.2d 34, 36 (Alaska 1965), the purposes served by notice of claim provisions differ, in theory, from the purposes of limitations statutes. Despite these non-conflicting purposes and the laudable goals underlying the notice of claim requirements, we think the practical effect of the city charter provisions is to nullify the state legislature's establishment of a two-year period for commencing tort actions. That is, even though the two years permitted for commencing an action would still apply through AS 09.65.070, the right to bring an action in Alaska's courts would be contingent upon giving a notice of claim within a substantially shorter period of time. If the injured person failed to give notice within the prescribed time, he would be barred from pursuing his remedy in state courts, despite the fact that his action would be timely under the two-year statute of limitations.

In light of the foregoing considerations, we conclude that AS 09.65.070 impliedly prohibits municipalities from requiring a potential plaintiff to submit notice of tort claims, as a condition to bringing an action, within a period shorter than the period provided by the statute of limitations.[4]

■ Accordingly, Section 1.10 of the Anchorage City Charter, which bars actions against the city unless the required notice of claim has been filed within 120 days after the injury occurs, is invalid. The superior court's grant of summary judgment is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

MATTHEWS, J., not participating.

RABINOWITZ, Justice, with whom BOOCHEVER, Chief Justice, joins concurring.

In my view, Section 1.10 of the Anchorage City Charter violates Alaska's constitutional guarantee of equal protection under the law. In support of her equal protection attack, appellant argues that the Anchorage Charter's 120-day notice of claim provision discriminates in favor of governmental and against non-governmental tort-feasors, as well as imposing substantial and costly burdens on the victims of governmental torts which are not borne by individuals who have been harmed by the conduct of non-governmental tort-feasors. Thus, the essence of appellant's equal protection argument is that the effect of the notice of claim provision is to arbitrarily divide all tort-feasors into two classifications: private tort-feasors to whom no notice is owed and governmental tort-feasors to whom notice is owed. In appellant's view, the Charter provision also has the effect of dividing the victims of tort-feasors into two arbitrary classes: victims of private tort-feasors who are not subject to the notice requirement, and victims of governmental tort-feasors who are subject to the notice of claim requirements of the Anchorage Charter. Given these classifications, appellant concludes:

> Applying new standards of intensified equal protection scrutiny adopted by the Alaska Supreme Court, it becomes apparent that the legislative goals advanced to justify the rough classifications . . . are not sufficiently tailored to survive equal protection challenge. The differ-

---

4. *Id.* at 187 (footnote omitted).

ence in treatment between public and private tort victims effected by notice provisions can have no fair relationship to the fortuity of having been inflicted with a governmental, as opposed to private, tort. No more convincing is the distinction the provisions make between public and private tortfeasors.

Appellant's equal protection arguments find judicial support in several jurisdictions. In *Reich v. State Highway Department*, 386 Mich. 617, 194 N.W.2d 700, 702 (Mich.1972), the Supreme Court of Michigan observed:

> Just as the notice requirement by its operation divides the natural class of negligent tort-feasors, so too the natural class of victims of negligent conduct is also arbitrarily split into two subclasses: victims of governmental negligence who must meet the requirement, and victims of private negligence who are subject to no such requirement.

In *Reich*, the Michigan Supreme Court declared the notice of claim provisions unconstitutional on equal protection grounds.[1] *Reich* has been followed by the Supreme Court of Nevada in *Turner v. Staggs*, 89 Nev. 230, 510 P.2d 879 (1973), *cert. denied*, 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973). And of particular significance is the Supreme Court of Washington's decision in *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845 (1975). In echoing the classification discussion of the *Reich* court, the Washington court, in *Hunter*, observed:

The effect of this and other nonclaim statutes is to deny a right of action to persons harmed by governmental misfeasance unless they provide the government with notice of their injuries within a short time after they occur. This prerequisite to tort recovery has no counterpart in actions between private parties. . .

Under this statutory system, victims of governmental torts must seek legal advice and act to preserve their claims within 120 days of receiving their injury. Other personal injury plaintiffs need only act within the limitation period—3 years at least in the case of adults . . . .[2]

In the *Hunter* court's view, the foregoing classifications flowing from the "nonclaim" statute constituted a barrier to suit for a significant number of victims of governmental "misfeasance." Noting that it is "a rare plaintiff who happens to know of the short notice period he must comply with, or to consult a lawyer before his time to file has expired,"[3] the *Hunter* court commenced its equal protection analysis by stating:

> The effect of the notice requirement on tort victims not fortunate enough to be aware of it is to deny them their cause of action. The right to be indemnified for personal injuries is a substantial property right, not only of monetary value but in many cases fundamental to the injured person's physical well-being and ability to continue to live a decent life.[4]

---

1. Unlike AS 09.50.250 which provides for waiver of sovereign immunity by the State of Alaska, the statute waiving sovereign immunity which was considered by the Supreme Court of Michigan contained an explicit notice of claim requirement. Criticism of the *Reich* opinion can be found in Copperrider, *The Court, the Legislature, and Governmental Tort Liability In Michigan*, 72 Mich.L.Rev. 187, 272 (1973).

   *See also* AS 09.65.070 which provided at the time the suit was filed:
   > (a) An action may be maintained against an incorporated borough, city, or other public corporation of like character in its corporate character and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of the unit of local government.

2. *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845, 847 (1975) (footnotes omitted). In Alaska the applicable statute of limitations is two years. AS 09.10.070 provides in part:
   > *Actions to be brought in two years.* No person may bring an action (1) . . . for any injury to the person or rights of another not arising on contract and not specifically provided otherwise . . . unless commenced within two years.

3. *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845, 848 (1975) (footnote omitted).

4. *Id.* 539 P.2d at 848.

After analyzing the differences advanced to support the classifications created by the Washington "nonclaim" statute,[5] the *Hunter* court concluded that "the arbitrary burden placed on state claimants by this type of statute cannot withstand constitutional scrutiny."[6]

In opposition to the foregoing authorities, appellee City of Anchorage points out that the Supreme Court of Michigan's opinion in the *Reich* case has been rejected by eight jurisdictions as well as the District of Columbia. Notice of claims provisions have been upheld on the grounds that there exists a rational basis for the legislative classifications created by the notice provisions, and that the notice provisions established by state law are conclusive evidence that the sovereign's waiver of governmental immunity was only conditional or partial.[7] Note, *Notice of Claim Provisions: An Equal Protection Perspective*, 60 Cornell L.Rev. 417, 431 (1975). In particular, the City of Anchorage argues that "*Reich* and its progeny have chosen to ignore . . . the large number of legitimate state purposes advanced by the notice provision" of the Anchorage Charter. Specifically, appellee contends that the notice and claim provision of the Anchorage Charter serves a variety of legitimate governmental purposes because it enables the city:

1. To investigate and perpetuate evidence while it is still fresh,

2. To begin preparing a defense in the event that litigation appears to be necessary,

3. Intelligently to evaluate claims in order that meritorious claims may be settled before the instigation of a law suit to avoid litigation costs,

4. To protect itself against unreasonable claims,

5. To obtain knowledge of any defects upon city property of which it might be unaware in order to facilitate prompt repairs,

6. To budget for payment of claims, and

7. To insure that officials responsible for fulfilling all of the tasks noted above are aware of their duty to act.[8]

In light of the foregoing justifications advanced in support of the Anchorage Charter's notice of claim requirement, it is the task of the judiciary to determine whether these asserted grounds of justification pass constitutional muster under appropriate equal protection tests. Turning first to the nature of the right involved, appellant contends that this court should hold that "redress in tort is deserving of the status of a fundamental right, entitled to heightened equal protection scrutiny under Alaska law."[9] Appellant argues that the

---

5. I will discuss these and other alleged justifications subsequently.

6. *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845, 851 (1975).

7. See *Binder v. City of Madison*, 72 Wis.2d 613, 241 N.W.2d 613 (1976); *Stanley v. City and County of San Francisco*, 48 Cal.App.3d 575, 121 Cal.Rptr. 842 (1975); *Wilson v. District of Columbia*, 338 A.2d 437 (D.C.Ct.App.1975); *Batchelder v. Haxby*, 337 N.E.2d 887 (Ind.Ct. App.1975); *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348 (1975), *appeal dismissed sub nom. Agost v. Idaho*, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975); *Lunday v. Vogelmann*, 213 N.W.2d 904 (Iowa 1973); *Guarrera v. A. L. Lee Memorial Hosp.*, 51 A.D.2d 867, 380 N.Y.S.2d 161 (1976), *appeal dismissed sua sponte*, 39 N.Y.2d 942, 386 N.Y.S.2d 1029; *Tessier v. Ann & Hope Factory Outlet, Inc.*, 114 R.I. 315, 332 A.2d 781 (1975); *Awe v. University of Wyoming*, 534 P.2d 97 (Wyo.1975).

8. Amicus Municipal Attorneys' Association additionally argues in its brief that "compliance with notice of claim provisions soon after the occurrence allows the city or its insurance adjusters to investigate the facts of the claim while they are still available." In making this argument, the Association further contends that "fundamental differences between municipalities and private corporations impose upon the former a higher requirement of efficiency and economy in risk management than in comparably sized private entities." This "high duty" is alleged to arise because the tax paying public supports municipal government and for the further reason that municipalities provide vital public services which cannot be permitted to be curtailed or eliminated by poor risk management.

9. When presented with federal equal protection assertions and when fundamental rights or sus-

individual's right to meaningful redress is a "fundamental" right [10] and, therefore, that the municipality must demonstrate a compelling state interest justifying the subject notice of claim provision. Despite the foregoing, I find it unnecessary to determine whether the nature of the right involved is of fundamental proportions and calls for application of the compelling state interest standard of equal protection analysis.[11] I deem it sufficient to note that important rights of redress of persons harmed by governmental conduct are involved, as well as equally significant concomitant rights of access to judicial forums for the adjudication of liability and damage issues flowing from such governmental conduct. Given that these rights are important, I have concluded appellant has demonstrated that the distinctions drawn by the Charter's notice of claim provision between governmental and private tort-feasors are arbitrary and that the resultant categories are suspect. Consequently, the City of Anchorage must meet a significant burden in demonstrating that the distinctions and classifications created by the Charter provision have a fair and substantial relation to legitimate governmental objectives.

In choosing to apply the foregoing equal protection test, I would take this occasion to reiterate this court's holding in *Isakson v. Rickey*, 550 P.2d 359, 362–63 (Alaska 1976).[12] There we said, in part:

> Under the rational basis test, in order for a classification to survive judicial scrutiny, the classification 'must be reasonable,

not arbitrary, and must rest upon some difference *having a fair and substantial relationship to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'*

It is this more flexible and more demanding standard which will be applied in future cases if the compelling state interest test is found inappropriate.[13]

Application of the *Isakson v. Rickey* equal protection test to the purported justifications which have been advanced by appellees and the amicus, in the context of the particular rights involved in the instant litigation, has led me to the conclusion that the Charter provision in question violates the equal protection provision of Alaska's constitution.

In reaching this conclusion, I find the reasoning of the Washington Supreme Court in *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845 (1975), highly persuasive. I agree with the Washington court's evaluation of the importance of the injured claimant's rights upon which notice of claims statutes, ordinances, or charter provisions impinge. As stated previously, I am also in accord with that court's conclusion that operation of such notice of claim requirements has the effect of creating arbitrary classes of tort-feasors and arbitrary classifications of tort victims. Due to such classifications, governmental tort-feasors are afforded a procedural advantage not available to nongovernmental tort-feasors; further, only victims of governmental negligence face a substantial

---

pect categories are involved, this court is required to apply the "compelling state interest" standard.

**10.** Appellant relies upon the following cases to illustrate the "centrality of reasonable redress in the American system of justice." *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113, 118 (1971); *Payne v. Superior Ct. of Los Angeles County*, 17 Cal.3d 908, 132 Cal.Rptr. 405, 553 P.2d 565, 570–71 (1976); *Klein v. Klein*, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70, 72 (1962). Also relied upon by appellant are the dissenting opinions of Justice McQuade in *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348, 1356 n.11 (1975), *appeal dismissed sub nom. Agost v. Idaho*, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975), and Justice Reyn-

oldson in *Lunday v. Vogelmann*, 213 N.W.2d 904, 908–10 (Iowa 1973).

**11.** This court has previously discussed the varying equal protection tests in *Isakson v. Rickey*, 550 P.2d 359, 362–63 (Alaska 1976); *Lynden Transport, Inc. v. State*, 532 P.2d 700, 706–07 (Alaska 1975); *State v. Adams*, 522 P.2d 1125, 1127 n.12 (Alaska 1974); and *State v. Wylie*, 516 P.2d 142, 145 n.4 (Alaska 1973).

**12.** *See also State v. Reefer King Co., Inc.*, 559 P.2d 56, 65 (Alaska 1976).

**13.** *Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976) (citation omitted) (emphasis added).

burden on the right to bring an action against their wrongdoers within the applicable statute of limitations.

In *Hunter*, the Supreme Court of Washington addressed the "ground of difference" most frequently advanced as a justification for the special requirement that notice statutes place on claimants, namely, the size and variety of governmental institutions and activities. In disposing of this justification, the *Hunter* court stated, in part:

> Governmental bodies range in size from small municipal corporations such as the petitioner school district to the State itself. As a class they are neither larger than nor more liability-prone than the class of private tortfeasors, which includes everything from single individuals to giant corporations financially larger even than the State.
>
> Most governmental subdivisions are small enough for their officials to know of incidents which may subject them to liability. In addition, they possess special investigative resources which make them 'in most instances better equipped to investigate and defend negligence suits than most private tortfeasors, for whom no special notice privileges are provided by law'. . . . The privilege of special notice given governmental bodies, and the burden concomitantly placed on

those with suits against them, cannot therefore correspond to any special need or inability to investigate particular to them.[14]

In my view, all the justifications advanced in the instant case by appellee regarding the municipality's need for prompt investigation[15] do not relate to any peculiar need of the municipality which supports the requirement of special notice from a victim of the municipality's tortious conduct. All tort-feasors have a similar interest in the prompt investigation of claims; all victims have a similar interest in obtaining redress for their injuries. As was noted by the *Hunter* court, most governmental units are better equipped to investigate and defend negligence actions than are private tortfeasors.[16]

Regarding the proferred justification that the notice of claim provision fulfills the need of the city to know of and correct offending conditions, I think there is merit in appellant's position that there is no greater need to know of hazards in order to repair and avoid further injuries solely because the entity responsible is a governmental unit. In this regard, the *Hunter* court stated: "Similarly, the importance of immediate knowledge of hazards in order to make repairs and avoid further injuries . . . is no greater because the entity

---

**14.** *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845, 849 (1975).

See Judge Staton's dissenting opinion in *Batchelder v. Haxby*, 337 N.E.2d 887, 890–91 (Ind. App.1975), in which he writes:

> Repeatedly, the stated purpose of the notice provision . . . has been to inform the government entity so that it may investigate the claim, prepare its defense, or settle the claim. In light of this purpose, I can perceive of no rational basis for the distinction between similarly situated tortfeasors and victims on the basis of the tortfeasor's status as a governmental or a private entity. *All tortfeasors have a similar interest in the prompt investigation of claims, in settlement, and in the preparation of a defense. All victims have a similar interest in seeking redress for their injuries.* (emphasis supplied) (citations omitted)

**15.** See justifications 1–4 set forth at page 11, *supra*.

**16.** As to the asserted justification that the 120–day notice provision protects the city from unreasonable claims, I think the comments of Justice Reynoldson, in his dissent in *Lunday v. Vogelmann*, 213 N.W.2d 904, 911 (Iowa 1973), are persuasive. Justice Reynoldson said:

> Even less valid is the frequently-encountered argument that a short-notice statute reduces the number of frivolous or fraudulent claims made against municipalities. . . . The municipality is protected from stale claims in the same manner as the private sector, that is, by the applicable statute of limitations. There is no good reason for it to enjoy an additional protection.

*See also Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845, 850 (1975). The court stated, in part:

> [F]ostering negotiation and settlement to reduce the amount of litigation . . . is desirable no matter who the parties are. (citation omitted)

responsible for them happens to be part of the government." [17]

As to the purported justification that the notice of claim provision is required in order to enable the City Assembly to budget for payment of the claims, the *Hunter* court commented:

> Special notice of possible future claims does little to facilitate budget planning, . . . as governmental entities so small as to be unable to use actuarial methods to forecast liabilities and self-insure, usually will purchase insurance like any private individual or corporation.[18]

Tort damages are speculative until they have been settled through the process of negotiation or by judicial proceedings. Therefore, early knowledge of the existence of possible claims will not have a significant impact on fiscal planning by governmental units. The fact that insurance is becoming harder and more expensive to obtain is not unique to governments; nor are the reasons for higher costs of liability and risk management different for government than they are for private persons or corporations.

I cannot accept the additional argument advanced by the amicus Municipal Attorneys' Association that "fundamental differences" exist between municipal and private entities. The amicus asserts that a higher duty is imposed upon municipalities because (1) taxpayers, not stockholders, support the government, and (2) vital services are provided by municipalities which cannot be curtailed. Here, I am persuaded by appellant's analysis that this "fundamental differences" justification

> relies entirely on the municipality's governmental status, in and of itself, for validity, a distinction impermissibly drawn, since rejected as a legitimate difference with the state legislature's abolition of municipal immunity. Municipal government can no longer claim special treatment with respect to its wrongdoing just because it is an organization supported by taxes. Nor can it legitimately argue that governmental attempts at risk management which result in unequal treatment among injured parties are justified by a need to conserve public resources and protect against their diversion from more 'public' services.[19]

In light of the foregoing, I conclude that the justifications advanced in support of the constitutionality of the classifications created by Section 1.10 of the Anchorage City Charter are insufficient when analyzed under the equal protection test adopted in *Isakson v. Rickey*, 550 P.2d 359, 361–63 (Alaska 1976). Therefore, I would hold that the classifications created by the notice of claim requirement between victims of governmental and nongovernmental tortious conduct, as well as between governmental and private tort-feasors, are arbitrary classifications which are not grounded upon fair and substantial distinctions between governmental units on the one hand and private individuals and corporations on the other and thus violate Alaska's constitutional guarantee of equal protection.

17. *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845, 850 (1975) (citation omitted).

18. *Id.* 539 P.2d at 849 (citation omitted). At the time of the death involved in this case, the city of Anchorage carried commercial insurance. According to the brief of the Municipal Attorneys' Association, the Municipality of Anchorage is presently a self-insurer.

19. *See City of Fairbanks v. Schaible*, 375 P.2d 201, 206–09 (Alaska 1962), and note 1, *supra*. *See also Ayala v. Philadelphia Bd. of Pub. Educ.*, 453 Pa. 584, 305 A.2d 877, 882 (1973).
   In regard to this aspect of the case, the *Hunter* court stated:
   In light of [the absence of other justifications], the only function the special treatment given governmental bodies seems to perform is the simple protection of the government from liability for its wrongdoing. Our state has clearly and unequivocally abjured any desire to so insulate itself from liability, however, in its absolute waiver of sovereign immunity, which places the government on an equal footing with private parties defendant.

   . . . . .

   Any policy of placing roadblocks in the way of potential claimants against the state [thus] having been abandoned, we cannot uphold nonclaim statutes simply because they serve to protect the public treasury. *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845, 850 (1975).