447 P.2d 677

**Howard ANSTINE, Richard Anstine and Marian Laak, Plaintiffs-Appellants,**

v.

**William S. HAWKINS, Administrator of the Estate of Elmer Theodore Anstine, Deceased, Defendant-Respondent.**

No. 10193.

Supreme Court of Idaho.

Nov. 29, 1968.

Hamilton & Hamilton, Coeur d'Alene, for plaintiffs-appellants.

David A. Frazier, Hawkins & McCabe, Coeur d'Alene, for defendant-respondent.

SPEAR, Justice.

The sole issue presented in this case is whether one who has been convicted of voluntary manslaughter can succeed to the estate of her victim. We conclude that since our statutes of descent and distribution do not provide for exclusion of such an heir, she is entitled to take.

Elmer T. Anstine married Doris L. Anstine on March 23, 1956. They lived together as husband and wife until the former's death on January 14, 1965. On February 27, 1965 Doris Anstine was convicted of voluntary manslaughter in the shooting death of her husband, and served 18 months of a 5-year sentence. There is nothing in the record on appeal to indicate that the shooting was the result of a scheme to inherit the decedent's estate.

Elmer Anstine died intestate, possessed only of community property belonging to the decedent and Doris Anstine. Part of the estate assets consists of the proceeds of a life insurance policy which named Doris Anstine as beneficiary. She, however, relinquished her interest in the policy as named beneficiary and the proceeds thereof were paid into the estate.

Petitioners here, who are Elmer Anstine's children by a former marriage, brought this action against the administrator of the decedent's estate. They contend that the decree of the probate court, as sustained by the district court, ordering distribution of the estate to Doris Anstine, was improper. Petitioners assert that it is a violation of public policy to allow a "murderer" to inherit the estate of his or her victim; and in any event, they contend, should such inheritance be allowed in order to comply with the letter of the statutes on succession, the proceeds should be held in a constructive trust for the heirs next in line.

At the outset, we conclude that any distinction to be made between the proceeds of the insurance policy and the rest of the estate is without merit in this case. Doris Anstine relinquished any rights as a beneficiary under the policy. The proceeds of the policy were, therefore, payable to the decedent's administrator and should be disposed of in the same manner as the rest of the estate assets. Whether or not such payment to the estate was proper is a question not raised by appellants.

I.C. § 14–113 provides that upon the death of one spouse intestate, all community property shall go to the survivor. This section is not qualified by any reference to the circumstances under which the decedent died. Nor does a research of the Idaho Code reveal any statutory qualification on the right of either testate or intestate succession by one who has been convicted of the homicide of his benefactor. Therefore, any qualification pronounced by this court would be a judicial grafting of public policy restrictions on an explicit statutory provision.

Those courts which have been inclined to provide relief against a wrongdoer have done so on two different theories: either they deny that legal title ever vested in the wrongdoer, or they concede that title vested and consider the wrongdoer a trustee ex maleficio, holding legal title in favor of those who would take in his or her place. 1 Bowe-Parker: Page on Wills § 17.19 (1960); In re Duncan's Estates, 40 Wash.2d 850, 246 P.2d 445, 39 A.L.R.2d 473 (1952). Either of these approaches squarely raises the problem of who shall inherit if the wrongdoer is precluded. This in turn may depend on whether a testate or intestate situation is presented. Should the heirs at law of the deceased inherit, or should the contingent beneficiaries under his will, if any, inherit? If the wrongdoer is precluded, should his heirs take, or is the maxim

that "one who cannot inherit cannot be a medium of inheritance" applicable?

The problem of who shall be classified as an excluded wrongdoer is also complex. Shall only murderers in the first degree be excluded, or shall the sanction extend down to those who are convicted of involuntary manslaughter? Shall those who are not convicted of a crime nonetheless be excluded if their act caused the death? And what sort of homicidal intent will be required to invoke the rule of exclusion: specific intent or none at all? Is it enough that the wrongdoer intended the consequences of his act, or must he have been motivated by the prospect of inheritance?

Further, the rule contended for by appellants could have significant implications in other areas of the law, such as contracts, suretyship and negotiable instruments. Is the wrongdoer to be denied every advantage accruing to him as a result of his victim's death, regardless of motive and degree of culpability? Thus it is easily discernible that the rule urged by the appellants raises countless knotty questions.

However, appellants contend that since there is no specific statutory declaration or provision covering the problem here presented, the common law should prevail because of the general rule provided in I.C. § 73–116[1]. This court has held that in determining the heirship of a surviving wife of an intestate deceased husband the Idaho statutes governing succession make I.C. § 73–116 inapplicable. In In re Hornby's Estate, 75 Idaho 361, 272 P.2d 1017 (1954), the court quoted from In re Reil's Estate, 70 Idaho 64, at page 69, 211 P.2d 407, at page 409, 19 A.L.R.2d 186, at page 190, as follows:

"Appellants contend that under I.C. § 73–116, the rules of the common law must be considered. Assuming that this contention is based upon the theory that this is a case 'not provided for' in the statute, the point is not well taken be-

---

[1]. "The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state."

cause our statute purports to provide a complete system for the succession to property of decedents. In so far as it does so it abrogates the common law."

Additionally, even if the common law were applicable, Justice Finley of the Supreme Court of the State of Washington pointed out that there is actually little common law authority for the exclusion of a murderer and concluded that the courts are without power to enlarge upon the statutory scheme. In re Duncan's Estates, supra.

We view the statutes of descent and distribution as a legislative declaration of public policy necessary for the orderly disposition of property. See Eversole v. Eversole, 169 Ky. 793, 185 S.W. 487, L.R.A. 1916E, 593; 39 A.L.R.2d 477, 487 (1916); McAllister v. Fair, 72 Kan. 533, 84 P. 112, 3 L.R.A.,N.S., 726 (1906). Substantial changes in public policy should come from the legislature. Where statutes are not ambiguous, it is the duty of the court to follow the law as written, and if it is socially or otherwise unsound, the power to correct is legislative, not judicial. Herndon v. West, 87 Idaho 335, 393 P.2d 35 (1964); John Hancock Mutual Life Insurance Co. v. Neill, 79 Idaho 385, 319 P.2d 195 (1957). The legislature has the resources for the research, study and proper formulation of broad public policy. The legislature is better qualified than the courts, by virtue of a carefully formed statute, to provide for the orderly disposition of decedents' property in the many situations raised by the problem of homicide for gain.

In the absence of any legislative declaration on the subject, we hold that Doris Anstine is entitled to inherit the intestate estate of her deceased husband. Until such time as we have a clear indication of the legislative intent, we reserve any decision on the succession rights of one who commits a homicide for the specific purpose of inheriting his victim's estate.

Judgment affirmed. Costs to respondent.

TAYLOR, McQUADE and McFADDEN, JJ., concur.

SMITH, C. J., concurs in the conclusion reached.