535 P.2d 1348

Roland NEWLAN and Frances Newlan, husband and wife, Plaintiffs and Appellants,

v.

The STATE of Idaho, Defendant and Respondent,

and

Thelma Schwartz as Administratrix of the Estate of Frank Harrison and Patricia Rippee and Michael Harrison Rippee, respectively, and the Allstate Insurance Company, Inc., Defendants.

Frank AGOST and Juanita Agost, Plaintiffs and Appellants,

v.

The STATE of Idaho, Defendant and Respondent.

Nos. 11561, 11655.

Supreme Court of Idaho.

April 30, 1975.

Rehearing Denied June 10, 1975.

Lloyd J. Webb of Webb, Pike, Burton & Carlson, Twin Falls, for defendants and appellants Newlan.

Nicholas Chenoweth, Orofino, Eli Rapaich, Lewiston, for defendants and appellants Agost.

W. Anthony Park, Atty. Gen., Peter C. Jenkins and Michael A. Greene, of Eberle, Berlin, Kading, Turnbow & Gillespie, chartered, Sp. Asst. Attys. Gen., Boise, for defendant and respondent.

Peter Heiser, Jr., of Kidwell & Heiser, Boise, as amicus curiae.

SHEPARD, Justice.

These are appeals in two separate actions from dismissal of plaintiffs' actions against the State as the result of automobile accidents. The cases present similar facts, give rise to nearly identical questions of law and therefore were consolidated upon appeal. The principal questions involve the constitutionality and correct interpretation of two sections of the Idaho Tort Claims Act enacted in 1971.

The facts as they relate to the Newlan case are as follows. Linda Newlan, the daughter of appellants Newlan, died on June 5, 1971 as the result of injuries suffered in an automobile accident which occurred June 1, 1971. On May 24, 1973 the Newlans filed a notice of claim against the State of Idaho for the wrongful death of their daughter. On June 1, 1973 the instant action was filed against the State and other defendants for wrongful death as a result of a slippery highway caused by inappropriate paving materials specified by the Idaho Department of Highways. The State moved to dismiss the complaint on the grounds that a claim for the damages had not been presented and filed with the Secretary of State within 120 days from the date the claim arose, or reasonably should have been discovered, as required by I.C. §§ 6–905—908. The motion was granted, the case dismissed and this appeal results.

The facts of the Agost case are similar. On July 31, 1972 Dale F. Agost, son of plaintiffs-appellants Agost died as a result of injuries sustained in an automobile accident which occurred that same day. On May 23, 1973 appellants Agost filed a notice of claim against the State of Idaho and then on September 5, 1973 commenced the instant action against the State for the wrongful death of their son alleging that it

resulted from the slippery condition of the road where the accident took place. As in the Newlan case, the complaint was dismissed for failure to comply with I.C. § 6–905, and this appeal results.

In Smith v. State, 93 Idaho 795, 473 P.2d 937 (1970) this court abrogated the doctrine of sovereign immunity in the State of Idaho. The court stated that the holding would govern only:

"* * * future causes of action arising on or after 60 days subsequent to the adjournment of the First Regular Session of the Forty-First Idaho State Legislature unless legislation is enacted at that session with respect to the abolition of the sovereign immunity of the state." Smith, *supra*, at 808, 473 P.2d at 950.

Thus *Smith* was to apply only prospectively and only in the absence of legislation. That holding was reiterated in Dawson v. Olson, 94 Idaho 636, 496 P.2d 97 (1972); Rathbun v. Department of Highways, 94 Idaho 700, 496 P.2d 937 (1972); Sims v. State, 94 Idaho 801, 498 P.2d 1274 (1972).

In 1971 in response to *Smith* the Idaho Legislature passed a comprehensive Idaho Tort Claims Act. That enactment exposed the State to more liability than did the court in *Smith*, extending state liability, with some exceptions, to include situations wherein the State was acting in a governmental capacity. The court in *Smith* had held the State liable only when it acted in a proprietary capacity. The Tort Claims Act also set forth certain procedural requirements such as I.C. § 6–905, which is at the core of this case and which provides:

"Filing claims against state—Time.—All claims against the state arising under the provisions of this act shall be presented to and filed with the secretary of state within one hundred twenty (120) days from the date the claim arose or reasonably should have been discovered, whichever is later."

In both the instant cases it is undisputed that the notices of claims were not filed within 120 days of the respective deaths when the cause of action arose. In Agost the claim was filed 296 days after the accident and in Newlan the time was a full 719 days after the death. Nevertheless appellants argue their claims should not have been dismissed. They challenge first the constitutionality of the above statute on equal protection grounds and further argue that even if constitutional, the statute does not mandate dismissal under the facts of the cases. The Agosts further argue that even if the statute is applicable, their actions indicate that their claim was filed within 120 days of the time they reasonably discovered their claim notwithstanding the fact that the claim was actually filed 296 days after the accident.

Appellants argue that the constitution prohibits the statutory establishment of two classes and discrimination against one of those classes since such is a denial of equal protection of the laws and thus our notice requirement is unconstitutional. That argument has been accepted in two states, Michigan and Nevada, and they have nullified their notice statutes. Reich v. State Highway Department, 386 Mich. 617, 194 N.W.2d 700 (1972); Turner v. Staggs, 510 P.2d 879 (Nev.1973), cert. den., Clark County v. Turner, 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973).

The statute under consideration herein does distinguish between two types of tort claimants but it is not every statutory classification that violates the equal protection clause. Stucki v. Loveland, 94 Idaho 621, 495 P.2d 571 (1972). As reviewed in *Stucki* the United States Supreme Court has approached the problem of statutory classification on a two-tier basis. If the classification is suspect because it is based on matters such as race, national origin or alienage, or the statute infringes upon fundamental rights such as voting, procreation or rights regarding criminal procedure then strict judicial scrutiny is applied and the classification scheme will be upheld only if necessary to further a compelling state interest. In the

absence of such "suspect" classification or infringement upon a fundamental right a traditional test will be applied to resolve the question of rational basis and all inferences as to constitutionality of statutes are indulged. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); San Antonio, etc., School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

There is no contention here that the establishment of a class of persons with tort claims against the state falls into a category of a "suspect" class. There are relatively few classifications which have been held to be suspect and among them are race, McLaughlin v. Florida, 379 U.S. 184, 85 S.C. 283, 13 L.Ed.2d 222 (1964); alienage, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); ancestry, Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1947), and perhaps sex, Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). However, also see Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). For fundamental constitutional rights see Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Shapiro v. Thompson, *supra*; Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

Although appellants argue that Boddie v. State of Connecticut, 401 U.S. 371, 91 S. Ct. 780, 28 L.Ed.2d 113 (1971) is applicable to the case at bar, we disagree. There the question was the ability to obtain access to the courts and denial thereof on the basis of wealth. The instant case does not involve that problem since all persons obtain the ability to sue the state regardless of wealth or the lack thereof insolong as they conform to the precedent *statutory* conditions.

■ We hold that the instant statute does not establish a suspect classification and establish a discrimination against one

class nor does the instant statute infringe upon a fundamental right and therefore the traditional equal protection test is applicable herein. This court in Evans v. Idaho State Tax Commission, 95 Idaho 54, 57–58, 501 P.2d 1054, 1057–1058 (1972) quoting McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed. 2d 393 (1961) stated:

" '* * * the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts may be conceived to justify it.' "

■ We hold that there are legitimate reasons for the statutory requirement of notice. *See* Jorstad v. City of Lewiston, 93 Idaho 122, 456 P.2d 766 (1969). There the court stated at 125, 456 P.2d at 769:

"* * * such a statute gives the city time to negotiate an amicable accord with an injured party. Probably the most compelling reason for the existence of such statutes, however, is to give a municipality time to investigate a claim, determine its merits, and prepare a defense if necessary."

*See also* Roberts v. State, 39 Cal.App.3d 844, 114 Cal.Rptr. 518 (1974); Lunday v. Vogelmann, 213 N.W.2d 904 (Iowa, 1973). The Supreme Court of Washington in Cook v. State, 83 Wash.2d 599, 521 P.2d 725 (1974) has recognized the legitimacy of different classifications between the state as a defendant tort-feasor and private parties as defendant tort-feasors. Therein the court stated:

"The state and its political subdivisions with the multitude of departments, agen-

cies, officers and employees and their diverse and widespread activities, touching virtually every aspect of life within the state, render the state and its subdivisions inherently different from any ordinary private tort-feasor. Public funds as opposed to private funds are involved. The number of claims against governmental agencies are vastly greater than against any individual private tort-feasor. An ordinary private tort-feasor is normally immediately aware of an incident involving potential liability, whereas the claim filing statute is usually the only sure and certain means by which the state or its subdivisions may be alerted to potential liability arising from a governmental activity." Cook v. State, 521 P.2d at 728.

We turn now to a consideration of the decisions of our sister states who have faced a similar problem. In Reich v. State Highway Department, 386 Mich. 617, 194 N.W.2d 700 (1972) that court declared invalid a notice period of only sixty days as compared to 120 day limitation in the instant case. The shortness of the sixty day period in Michigan was stressed in that opinion and although not applicable to that case the court stressed a then recent amendment to the Michigan statute M.C. L.A., § 691.1404, M.S.A. § 3.996(104), providing for a 120 day notice period with 180 days for minors and incapacitated persons. All of the plaintiffs in *Reich* would have qualified under the amended statute. We find the opinion in *Reich* to be highly conclusory without any consideration of the rationale for such notice statute, nor any real analysis of the equal protection problem. We are not persuaded by that authority.

We find Turner v. Staggs, 510 P.2d 879 (Nev.1973) to be equally unpersuasive. Therein the court was split three to two with a strong dissent. Arguably the constitutional question set forth in the opinion was dictum since the court had prior to that consideration already held that the minority of the plaintiff therein excused compliance with the statute.

We believe the opinions of the Michigan and Nevada courts are contrary to the weight of authority. Most states have consistently rejected similar constitutional attacks. *See* Artukovich v. Astendorf, 21 Cal.2d 329, 131 P.2d 831 (1942); Roberts v. State, *supra*; Cook v. State, *supra*; Lunday v. Vogelmann, *supra*, and Gallegos v. Midvale City, 27 Utah 2d 27, 492 P.2d 1335 (1972).

It is argued that this court in Smith v. State, *supra*, should be taken to have prevented the legislature from enacting a notice requirement. In *Smith* we held that since the courts had developed the doctrine of sovereign immunity the courts had the power to modify or abrogate it "so long as the legislature has not acted." 93 Idaho at 803, 473 P.2d at 945. That abrogation was not held to have been constitutionally required and this court in fact said: "Ideally the subject should be dealt with by the legislature by a comprehensive legislative enactment." 93 Idaho at 805, 473 P.2d at 947. We note further that in California where the first landmark case judicially abolishing sovereign immunity was issued, Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961), the courts have thereafter uniformly followed procedures enacted by the legislature, including notice of claim requirements. As was said in Dias v. Eden Township Hospital District, 57 Cal.2d 502, 20 Cal.Rptr. 630, 370 P.2d 334–335 (1962) "There is no merit to plaintiffs' argument that our decision in Muskopf . . . in effect eliminated the requirement for presentation of claims as a condition to the maintenance of actions against public entities." *See also* Roberts v. State, *supra*.

■ We treat appellants' argument that the Tort Claims Act was ill conceived and hastily drafted only with the observation that once this court has determined the statute to be constitutional we have no alternative but to interpret and apply it,

thereby heeding the admonition of the United States Supreme Court in Helvering v. Davis, 301 U.S. 619, 644, 57 S.Ct. 904, 910, 81 L.Ed. 1307 (1937) "Whether wisdom or unwisdom resides in the [statutory scheme] is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here as often is with power, not with wisdom."

■■■ Having held that I.C. § 6–905 is constitutional we now consider appellants' argument that failure to comply with the notice requirement is not a bar to suit unless the State can show prejudice to it.

I.C. § 6–908 states:

"Restriction on allowance of claims.—No claim or action shall be allowed against a governmental entity unless the claim has been presented and filed within the time limits prescribed by this act."

The statutory language is clear and unambiguous. It can occasion but one interpretation and that is compliance is a condition precedent to bringing suit against the state. Where a statute is not ambiguous it is the duty of the court to follow the law as enacted and if the statute is unwise, power to correct is legislative not judicial. Anstine v. Hawkins, 92 Idaho 561, 447 P.2d 677 (1968). It is clear that compliance with a notice of claim requirement is mandatory and without such compliance a suit may not be maintained. *See* Dunn v. Boise City, 45 Idaho 362, 262 P. 507 (1927); McLean v. City of Spirit Lake, 91 Idaho 779, 430 P.2d 670 (1967); Carter v. Allan, 94 Idaho 190, 484 P.2d 739 (1971).

■ Appellants argue that the State knew of and investigated both accidents within hours of their occurrence and therefore the State had actual notice of the claim rendering literal compliance with the notice statute unnecessary, relying on Jorstad v. City of Lewiston, *supra*. We note first that appellants herein are adults with no incapacities. In *Jorstad* the court stressed that the real parties in interest therein were minors, that the notice period was only 30 days and that the requirement was part of a municipal code "which inher-

ently have limited publication and are rarely uniform." 93 Idaho at 125, 456 P.2d at 769. In *Jorstad* the city had argued that the action should not lie since plaintiffs had failed to give notice of the claim within 30 days as required by the city charter. This court disagreed holding that where "the city has had *substantial actual* notice of serious injury to a potential plaintiff, it cannot complain of the plaintiff's failure to follow the letter of the formal requirements of the notice statute. [in actuality city ordinance]" Jorstad, *supra*, 93 Idaho at 126, 456 P.2d at 770. (Emphasis in original)

We have examined all cases drawn to our attention by appellants and amicus curiae, both within and without Idaho where a court refused to apply such a notice statute strictly. With the sole exception of *Jorstad* we find that all such cases involved some action of some type taken or attempted by the plaintiffs within the statutory notice period showing at least some compliance with the notice requirement. Those courts so finding for plaintiffs held that the action taken was sufficient. None of those cases appear to cover a situation where a plaintiff took no action whatsoever within the statutory period. *Jorstad* appears to be the only case wherein actual notice was held to be sufficient although no claim at all was filed within the statutory period. The continued vitality of *Jorstad* may be in doubt since I.C. § 6–905 and Carter v. Allan, *supra*, are developments subsequent to the issuance of the opinion in *Jorstad*.

Even assuming, however, that the *Jorstad* actual notice test is still viable there has been no such actual notice in these cases. Although the accidents involved herein were apparently investigated and reports thereof were filed, nevertheless there is no indication that the State could have even suspected it might be subject to a claim. The State was not on notice of any facts to allow it to arrive at an amicable accord with a claimant or to investigate a possible claim to determine its merits and if neces-

sary prepare a defense, which are two of the purposes for a notice statute set forth in *Jorstad.*

■ Appellants Agost argue compliance with the statute in that they filed notice of claim within 120 days of the date the claim "reasonably should have been discovered . . ." I.C. § 6–905. This court has stated in the context of fraud and the statute of limitations, "knowledge of facts that would put a reasonably prudent person on inquiry is equivalent to knowledge of the fraud, and will start the running of the statute." Parish v. Page, 50 Idaho 87, 293 P. 979 (1930). *See also* Gerlach v. Schultz, 72 Idaho 507, 244 P.2d 1095 (1952). Appellants Agost assert that although they had knowledge of the facts the day of the accident nevertheless they were not aware they had a cause of action until they consulted with a lawyer. Such is not a sufficient excuse and as pointed out by the trial court no other reason or cause was pleaded, shown or argued for the extended delay. We cannot say as a matter of law that the trial court erred in ruling that there was noncompliance with the statute.

The orders of the trial courts are affirmed. Costs to Respondent.

McFADDEN, DONALDSON and BAKES, JJ., concur.

McQUADE, Chief Justice (dissenting).

In Smith v. State,[1] this Court renounced the doctrine of sovereign immunity as being a proposition of law which was outmoded, and contrary to the basic concept underlying the entire field of tort law that liability follows negligence and that individuals and corporations are responsible for the negligent acts of their agents and employees acting in the course of their employment. Today's decision by a majority of this Court represents a retrenchment and breathes renewed life into a doctrine of law which I thought was laid to rest for good in Smith v. State. I must therefore respectfully dissent.

My dissent is founded upon the following grounds: First, I.C. § 6–905, which sets forth a Notice of Claim requirement before a governmental entity can be sued is violative of Article I Section 18 of the Idaho State Constitution; second, I.C. § 6–905 denies the equal protection of the law to those injured at the expense of a governmental entity and therefore violates Article I Section 2 of the Idaho Constitution[2] and the 14th Amendment to the United States Constitution;[3] and third, even if valid, I.C. § 6–905 was substantially complied with because the State received "substantial actual" notice of appellants' claims against it before both notices of claims were filed.[4]

ARTICLE I, SECTION 18.

Among the most highly prized rights conferred by the Magna Charta were those guaranteed by this brief but expressive clause which provided: "To none will we sell, to none will we deny, or delay, right

---

1. 93 Idaho 795, 473 P.2d 937 (1970).

2. Article I, § 2. *"Political power inherent in the people.*—All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same whenever they may deem it necessary; and no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the legislature."

3. AMENDMENT XIV.—Section 1. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

4. Jorstad v. City of Lewiston, 93 Idaho 122, 456 P.2d 766 (1969).

or justice."[5] In many state constitutions there are provisions, varying slightly in terms, which have adopted this safeguard, and stipulate that justice shall be administered to all without delay or denial, without sale or prejudice, and that the courts shall always be open to all alike.[6] A similar provision was written into the Idaho Constitution and has become one of the foundation stones of our judicial system. Article I Section 18 provides:

> "§ 18. *Justice to be freely and speedily administered.*—Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice."

I am aware that historical accounts indicate that the provision in the Magna Charta was adopted to eliminate two major abuses in the judicial process at that time: first the practice of the King of selling justice by imposing fees on litigants through his courts, and second, the practices of a corrupt judiciary which would demand oppressive gratuities for granting or withholding decisions in pending causes.[7] However, I believe that Idaho's adaptation of this provision, goes beyond the original confines of the Magna Charta and therefore must be given a more expansive reading.

In my view, Article I Section 18 reflects a strong public policy of granting to the citizenry of this state a reasonable period of time to present bona fide claims for judicial resolution. I believe that for such wrongs as are recognized by the law of this State, as indeed tort claims against governmental entities are, the courts must be *open* to afford a remedy. "It is the policy of the law that courts of justice should be open to all persons who desire to have questions as to personal and property rights adjudicated."[8] The 120 days notice of claim requirement set out in the Idaho Tort Claims Act does not afford a reasonable period of time for people to examine their claims and secure counsel to pursue them. On the contrary the notice provision operates to avoid the proper presentation of claims, and by so doing *closes* the courts and *denies* justice to those who have a claim against a governmental tort-feasor. This is inconsistent with the policy of the law to give every litigant his day in court and a full and ample opportunity to be heard.[9] The provision acts as a trap for

---

5. Magna Charta, Chap. 40 reads: "Nulli vendemus, nulli negabimus, aut differemus rectum aut justiciam."

6. *See* for example Colorado Constitution, Art. II, Sec. 6; Montana Constitution, Art. II, Sec. 16 (1972 Constitution); Arizona Constitution, Art. 2, § 11; Oklahoma Constitution, Art. 2, § 6; and others listed in 11 Am. Jur. Constitutional Law, § 326 at 1121 footnote 1.

7. Sir William Holdsworth, in his A History of English Law, Volume 1, at 57–58 (7th rev. ed. 1966) stated: "The fortieth clause provides that right and justice shall not be sold or denied or delayed. This clause again illustrates the fact that royal justice was popular. The complaint is that it is too dear or that it is not forthcoming. The clause did not wholly stop the evils of which it complained, as later Parliamentary petitions show. But probably it did something to cheapen justice, and to stop the abuses which were rampant in John's reign. Madox says,

'Through fines for writs and process of law in many cases were always a part of the crown revenue, and were constantly paid . . . . Yet, if my observation does not fail me, the fines which were paid for writs and process of law, were more moderate . . . than they used to be before; and, I think, the actual denial of right, and the stopping or delaying of it, which before, upon paying of money or fines used to be practised, were . . . quite taken away, or by degrees brought into disuse.'" See also 11 Am.Jur. Constitutional Law § 326 at 1122 footnotes 3 & 4.

8. McCullough v. Cuthbert, 46 Idaho 294, 302, 267 P. 828, 830 (1928).

9. *See* In re Water Right of Utah Const. Co., 30 F.2d 436 (E.D.Idaho 1929); Karenius v. Merchants' Protective Ass'n, 65 Utah 183, 235 P. 880 (1925); Greenfield v. Central Labor Council of Portland and Vicinity, 104 Or. 236, 207 P. 168 (1922) modifying 104 Or. 236, 192 P. 783 (1920).

the unwary and thus operates to undermine the guarantees set forth in Article I Section 18. The safeguards set forth in Article I Section 18 are mandatory, and the legislature's attempt to nullify them must fail.[10]

## EQUAL PROTECTION

I am also unable to agree with the majority opinion's conclusion that I.C. § 6–905 does not deny to victims of governmental torts equal protection of the law. Assuming the majority opinion is correct in utilizing the less stringent standard of restrained review in dealing with appellants' equal protection challenge to the 120–days notice requirement, I am not persuaded that the classification is rational.[11] I believe the Notice of Claim provision found in the Idaho Tort Claims Act creates arbitrary and unreasonable classes in two ways.[12] First, the natural class of *tortfeasors* is divided into *private* tort feasors to whom no notice of claim is owed, and *public* tort feasors to whom notice of claim is required. This constitutes an unreasonable and arbitrary variance in the treatment of a natural class. Second, the natural

class of tort *victims* is arbitrarily split into two subclasses, victims of private negligence, who are not subject to special notice of claim requirements, and victims of governmental negligence, who must comply with the special notice requirement or face dismissal of their causes of actions. The notice requirement acts as a special statute of limitation which arbitrarily bars the actions of the victims of governmental negligence after only 120 days. Victims of private negligence have two years to bring their action with no notice provision. This notice of claim requirement gives the governmental entity an unfair advantage over the private litigant by providing the governmental entity an artificial cloak of a special short-time limitation in addition to the normal limitation period for torts. I find this treatment to be arbitrary, without rational basis, and therefore to violate the guarantee of equal protection.

A brief illustration will demonstrate the arbitrariness and capriciousness of this statutory classification which treats victims of governmental torts differently from victims of private torts without a rational basis. A citizen who is hit by a truck driven

10. Day v. Day, 12 Idaho 556, 86 P. 531 (1906).

11. While this dissent limits its equal protection analysis to the less stringent standard of restrained review, I find Justice Reynoldson's analysis in his dissent in Lunday v. Vogelmann, 213 N.W.2d 904, 908–9 (Iowa 1973), quite intriguing, Justice Reynoldson believes that in these equal protection challenges to notice of claim provisions, what is at stake is a fundamental right of reasonable access to a court to seek redress for injuries suffered through the wrongful acts of another.

"It would plainly impinge on basic rights to deny reasonable opportunity for redress in court to one who through the wrongful act of another has been permanently disabled, with a consequent inability to enjoy life and to follow a gainful occupation in order to acquire and possess property. But to hold only a portion of the persons so affected—those injured by the wrongful act of a municipality—must suffer the astonishing constraints of a 60-day notice statute, additionally denies those persons equal protection of the law."

Justice Reynoldson further commented,

"The State cannot deny one a reasonable opportunity to litigate a matter seriously affecting his person or property unless it provides a recognized, effective alternative method for settlement of the dispute. It follows such access cannot be unreasonably constrained for a particular class of persons without also violating the equal protection clause. [Cites omitted] And because this right (to seek redress in court) is also a 'fundamental right,' the doctrine of 'close scrutiny' by the judiciary *is* applicable. [Cite omitted] The usual presumption of constitutionality is reversed. The State's classification of those injured by the negligence of a municipality vis-a-vis those injured by the negligence of others is suspect and must be persuasively justified."

12. *See* Turner v. Staggs, 89 Nev. 230, 510 P.2d 879 (1973), cert. den. in 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486; Reich v. State Highway Dept., 386 Mich. 617, 194 N.W.2d 700 (1972).

by his neighbor, who works for a private company has two years to pursue his claim. Yet the same citizen, unfortunate enough to be hit by a truck driven by his neighbor who works for the government must file a formal notice of his claim with the Secretary of State within 120 days, otherwise his claim is totally defeated and barred regardless of its merit. This is the case even though the victim of a governmental tort suffers a personal injury no less painful, disabling, costly or damage-producing than the one he may have incurred when struck by the vehicle driven by his privately employed neighbor. This is contrary to the spirit of our Governmental Tort Claims Act which evidences an intent to grant a remedy to victims of tortious actions on the part of the government and to allow recovery in order to spread the loss incurred by the victims of governmental torts. This notice of claim provision " * * * impede[s] the law's progress toward[s] a goal of uniform and even-handed justice." [13]

The majority opinion advances two major purposes to justify, this short notice of claim provision: (1) to give the governmental entity time to investigate the claim, determine its merits and prepare a defense if necessary and (2) to give the governmental entity time to negotiate an amicable accord with an injured party. I believe that these are nothing more than makeshift justifications which cannot be said to bear a rational relationship to a legitimate governmental interest.

In answering the majority's opinion's first proposed rationalization, it seems apparent to me that the state is better equipped to investigate and defend negligence suits than are most private tort-feasors to whom no special notice privileges have been granted by the legislature. There is a panoply of personnel at the state's disposal including police officers, highway personnel, and attorneys who may promptly investigate the cause and effect of accidents. Indeed an investigation was done and reports submitted concerning the accidents in both the *Newlan* and *Agost* cases shortly after the accidents occurred. Thus knowledge of a potential claim usually reaches the state before any formal notice of claim is filed. In answering the second proposed rationalization, I can see no reason why a governmental entity could not and would not be desirous of reaching an amicable accord with an injured party after a complaint is filed. If anything the governmental entity would be compelled to be more serious with its settlement offer when faced with the real possibility of court proceedings against it. At the point of time when the injured plaintiff goes to the trouble and expense of hiring an attorney to file a formal complaint he is much more serious in his belief that his claim is meritorious. This presents a greater impetus for settlement than at the preliminary stage where all the injured plaintiff has done is to put the governmental entity on notice that he might have a meritorious claim against it. Thus the justifications employed by the majority opinion to uphold the validity of this notice of claim provision are without basic merit.

## SUBSTANTIAL ACTUAL NOTICE

In any event, I believe the cases at bar come within the purview and holding of Jorstad v. City of Lewiston [14] the rationale of which is still good law in this state despite the majority's intimation to the contrary. In *Jorstad*, plaintiff, as guardian ad litem for the children of the deceased, brought a wrongful death action against the City of Lewiston arising out of a highway accident which proved to be fatal. The city strenuously argued that it had not received written notice of the claim within thirty days after the injury was sustained as required by a provision in its city charter. It was conceded that a notice of claim

13. Lunday v. Vogelmann, *supra* n. 11, at 912, Reynoldson, J., (dissenting).

14. Supra n. 4.

had not been filed until 12 months and 27 days after the accident. The city therefore maintained that since the timely filing of a claim was a condition precedent to the right to maintain an action against it and since the condition had not been complied with, the complaint against it should be dismissed.

This court rejected the city's argument, and in so doing pronounced the following rule:

> "Where the city has had *substantial actual* notice of serious injury to a potential plaintiff, it cannot complain of the plaintiff's failure to follow the letter of the formal requirements of the notice statute." [Emphasis in original].[15]

The Court found that investigations by police officers and a city engineer shortly after the highway accident were sufficient to give substantial actual notice to the city, thereby substantially complying with the notice of claim requirement found in the Lewiston city charter. It therefore refused to dismiss plaintiff's cause of action.

In the *Newlan* case, the State of Idaho had substantial actual notice of the accident as specified in the Affidavit of Roland Newlan filed opposing the State's Motion to Dismiss. Officer Earl L. Holden, a state policeman investigated the accident and submitted an accident report describing the accident and specifying the injuries sustained. This report was submitted to the State Police, a division of the Department of Law Enforcement of the State of Idaho within 10 days after the accident. The report became a part of the records of the department of Law Enforcement, and from this it's fair to say that officials of that Department were aware of the accident. In addition, officials of the State Department of Highways, at the Rigby Maintenance Division, were informed within a day of the accident as to the time and place of its occurrence, and as to the

character and cause of plaintiff's damage. I believe that these investigations provided substantial actual notice to the State of plaintiff's potential claim against it, thus substantially complying with I.C. § 6–905.

In the *Agost* case, within hours after the accident, police officers from the Idaho State Patrol and an employee from the State Highway Department were on the scene preparing written reports. These reports were later filed with and became part of the records of the Department of Law Enforcement, and the Department of Highways. In addition, a comprehensive liability insurance form was filled out along with a fatality report which described what had happened. Furthermore the road was repaired shortly after the accident. All this certainly imparted substantial actual notice to the State of potential liability, thus substantially complying with I.C. § 6–905.

I cannot agree with the majority opinion's contention that "The continued vitality of *Jorstad* may be in doubt since I.C. § 6–905 and Carter v. Allan,[16] are developments subsequent to the issuance of the opinion in *Jorstad*." The *Carter* case is clearly distinguishable from *Jorstad*. In *Carter* what was involved was a negligence suit brought against officials of the City of Hailey for damages which resulted from a pedestrian's tripping and falling over a ridge in a city sidewalk. There was no contention that the city had received substantial actual notice of the accident as there was in *Jorstad*. Furthermore, the Court in *Jorstad* anticipated the *Carter* situation and distinguished it.

> "It must be borne in mind that we are not here dealing with an action such as those arising from a fall caused by a minor sidewalk defect, which incidents often cannot be substantiated outside of the claimant's own testimony. Here there was substantial external evidence of the circumstances of the decedent's

---

15. *Id.* at 126, 456 P.2d at 770.

16. 94 Idaho 190, 484 P.2d 739 (1971).

accident and all the facts were equally available to both appellant and respondent." [17]

Nor am I persuaded that I.C. § 6–905 vitiates the *Jorstad* holding, and in the absence of some concrete proof that this was the legislature's desire, I would reaffirm the *Jorstad* holding.

For all of the above mentioned reasons, I would strike down the 120 day notice of claim requirement that is written into the Idaho Tort Claims act, and allow a party injured because of a governmental tort feasor the same period of time to pursue his claim as the party injured at the expense of a private individual.

17. Supra, n. 4, 93 Idaho at 126, 456 P.2d at 770.