887 P.2d 1061 (1995)
126 Idaho 554
In the Matter of the ADOPTION OF Margaret Elizabeth Melling CHANEY, an adult over the age of eighteen years.
John MELLING, Petitioner-Appellant,
v.
Margaret Elizabeth Melling CHANEY, Respondent.
No. 20922.
Supreme Court of Idaho, Eastern Idaho, September 1994 Term.
January 5, 1995.
*1062 Marc J. Weinpel, Idaho Falls, for appellant.
Robin D. Dunn, Rigby, for respondent.
TROUT, Justice.
This is an adult adoption case in which an adult child sought to have her stepfather adopt her after she reached the age of eighteen, and also sought termination of her parental relationship with her father. The magistrate court concluded that I.C. § 16-1501 did provide for adoption of adults, and thus such an adoption was permissible; however the court did not terminate the father's rights, and did not rule on the consequences of the adoption to him. The father appeared at the hearing after receiving notice of the proposed adoption, refused to give his consent, and in fact objected to the adoption. The magistrate concluded that there was no requirement for the father's consent for an adult adoption, and thus he went ahead and granted the adoption, but did not terminate the father's rights. The district court upheld the magistrate ruling.

I.

BACKGROUND AND PRIOR PROCEEDINGS
Margaret Elizabeth Chaney (Chaney) was born on December 3, 1974 and adopted by John Melling (Melling) and BarBara Melling (BarBara) as an infant. The couple was divorced on May 14, 1979. Chaney lived with BarBara after the divorce. BarBara was remarried on April 3, 1980 to Robert Chaney (Robert).
On December 23, 1992, Robert filed a petition for adoption of Chaney. Both Chaney and Robert consented to the adoption. Chaney was eighteen years of age at the time. Also, a petition to terminate the parental rights of Melling was filed along with a petition for a name change. A copy of the petition was served upon Melling and was also published in the local paper.
On January 20, 1993, Melling filed a motion to dismiss the adoption and parental termination proceeding. Melling claimed that the Termination of Parent and Child Relationship Act, I.C. §§ 16-2001-2015, applied and must be followed to effectuate termination of his parental rights. Further, he claimed that as the natural father he did not and would not consent to the adoption. He also alleged that the purpose for the adoption was to alienate him from his daughter and for religious purposes.
The magistrate granted the adoption pursuant to I.C. § 16-1501. The magistrate ruled that Robert and Chaney both consented to the adoption and that a parental relationship had been established for at least one year. The magistrate also found that parental consent by Melling was not necessary for an adult adoption. However, the magistrate would not terminate Melling's parental rights pursuant to the Parental Termination Act. Instead the magistrate stated that Melling's parental rights may still be in effect because there was no statute or case law authority by which these rights could be terminated.
On appeal, the district court affirmed the adoption without requiring parental consent and without applying the parental termination statutes. The court reasoned that the Idaho parental termination statutes, which *1063 are referred to in the adoption statutes, define a "child" as one who is under age eighteen. I.C. § 16-2002(b). The court found this definition was consistent with other definitions of "minors" in the Idaho Code. I.C. §§ 16-1802, 32-101. Thus, the court held that it did not have the authority to terminate a natural parent's rights, since the parental termination statutes apply only to persons under the age of eighteen. The court further held that parental consent was not necessary for an adult adoption.
The district court would not rule on the status of the relationship between Melling and Chaney. The court stated that the legislature had not addressed this issue within the statutory scheme and, since adoption is a statutory creation, it reasoned that it would not legislate the issue. The court also affirmed the denial of attorney fees. Melling has now appealed to this Court. On appeal, he contends that the trial court erred in finding that Melling had no right to appear or withhold his consent to the adoption. He further contends that there is no statutory procedure for terminating the parental rights over, or granting an adoption of, an adult child.

II.

MELLING RECEIVED NOTICE AND OPPORTUNITY TO BE HEARD
Melling initially argues that he was denied due process. He asserts that the magistrate's written ruling, which provided that Melling did not have standing to contest the adoption, is evidence that he was not allowed to be heard and thus was denied due process. Due process requires the right to timely notice and the right to be heard in a meaningful forum. Sweitzer v. Dean, 118 Idaho 568, 573, 798 P.2d 27, 32 (1990). Chaney served notice of the adoption on Melling, and the magistrate then allowed Melling to testify and took into consideration Melling's testimony. Under the circumstances presented in this case we cannot agree that Melling suffered any deprivation of his right to due process.

III.

I.C. § 16-1504 DOES NOT APPLY TO ADULT ADOPTIONS
A key issue in this case is whether an adult may be adopted by another adult without the consent of all living natural parents. The chief argument made by Melling is that I.C. § 16-1504 requires consent of any parent whose rights will be terminated as a result of the adoption.[1] I.C. § 16-1501 states "[p]ersons not minors may be adopted by a resident adult" and I.C. § 16-1504 provides "[a] child cannot be adopted without the consent of its parents, if living." Melling contends that "child" as used in I.C. § 16-1504, refers to any child, as in one who is in a parent/child relationship, and not just to minors. He asserts that under the Idaho adoption statutes "child" is referred to many times, and without construing it to mean "child" in the relational sense an adult adoption could not take place. For reasons which will be discussed further in this opinion, we agree that an adult adoption cannot take place; but we do not agree with Melling's initial premise that "child," as used in the adoption statutes, must refer to someone in the relationship of parent and child.
We are not persuaded by Melling's argument that the legislature intended the consent statute to apply to adult adoptions. I.C. § 16-1501 allows for the adoption of "[p]ersons not minors" and by using the term "persons not minors" the legislature clearly made a distinction between a minor child and an adult child; thus, when the adoption statutes refer to "children" or "child" they are referring to a person who is not eighteen years old. There are only two other provisions in the adoption statutes which give any indication that they apply to anyone except a minor child. In each of those instances, the legislature clearly referred to them as "the person adopting an adult" and "a person not a minor being adopted by a resident adult." *1064 I.C. §§ 16-1502, -1506(2). There is no indication the legislature intended the parental consent statute to apply to an adult adoption.
Further support for this interpretation is found in the history of the adoption statutes. The consent requirement for adoptions was enacted as a part of Idaho's adoption statutes, which provided for adoption only in the case of minor children. When first enacted in 1879, the Idaho statute read:
Section 1.  Any minor child may be adopted by any adult person, in the cases and subject to the rules prescribed in this Act.
....
Section 4.  A legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living; except, however, that consent is not necessary from a father or mother deprived of civil rights, or adjudged guilty of adultery, or of cruelty, and for either cause divorced, or adjudged to be an habitual drunkard, or who has been judicially deprived of the custody of the child on account of cruelty or neglect.
In interpreting statutes, we are governed by the rule that statutes which relate to the same subject matter, or are in pari materia, must be construed together. Union Pac. R.R. v. Board of Tax Appeals, 103 Idaho 808, 811, 654 P.2d 901, 904 (1982); Blackaby v. Dunning, 40 Idaho 20, 24, 232 P. 566, 567 (1924). The legislature enacted Sections 1 and 4 simultaneously, and therefore must have intended to provide only for the consent procedure in minor child adoptions.
Additionally, when the legislature amended I.C. § 16-1501 [SECTION 1] in 1953 to provide for adult adoptions, the consent statute was not amended. The fact that the consent statute was in place and enacted solely when minor adoptions were provided for, and then was not amended when adult adoptions were included, is at least an indication that the legislature did not intend the consent statute to apply to adult adoptions. Similarly, in 1957 when the consent statute was amended to include a procedure for appeals, the legislature again did not include adult adoptions. Then, in 1969, when the consent statute was further amended to incorporate the termination statutes, the legislature still did not include adult adoptions. It is apparent that our legislature was dealing only with adoptions of minors when it enacted and subsequently amended the consent statute. We accordingly hold that the legislature did not intend for the parental consent statute to apply to adult adoptions, and therefore it does not apply to Melling.

IV.

THE TERMINATION OF PARENTAL RIGHTS STATUTE DOES NOT APPLY TO THIS CASE
Melling argues that the parental termination statutes, I.C. §§ 16-2001-2010, apply to his case and require that there must be a valid termination of his parental rights before an adoption can take place. However, we find that the legislature clearly did not intend the parental termination statutes to apply to adult adoptions. The parental termination statutes expressly define the term "child" as "a person less than eighteen (18) years of age." I.C. § 16-2002(b). The parental termination statutes are, therefore, not applicable to Melling.

V.

THERE IS NO PROCEDURE FOR AN ADULT ADOPTION IN IDAHO
The final and most problematic issue presented by this appeal is what procedure must be followed to effectuate an adult adoption. We believe that question is not answered in Idaho's statutes on adoption. While the Adoption of Children Act, I.C. §§ 16-1501-1513, clearly provides the procedure by which a minor may be adopted, the same is not true for adult adoptions. I.C. § 16-1501 does allow for a person not a minor to be adopted, however no procedure is then prescribed. We have concluded above that the legislature did not include the I.C. § 16-1504 consent provisions in adult adoptions. Further, the only statutory reference to a procedure for adult adoptions is found in I.C. § 16-1506 which discusses "a person not a minor being adopted by a resident *1065 adult under the provisions of section 16-1501." (Emphasis added). Presumably the legislature only intended that adult adoptions be addressed and provided for under I.C. § 16-1501.
Chaney argues that we should be able to create a procedure for adult adoptions by picking and choosing among the requirements for adoption of a minor. We do not agree. Adoption was not recognized at common law and thus the right to adopt a child is a right which is wholly statutory. As such the courts are required to construe strictly the provisions relating to adoption. Vaughan v. Hubbard, 38 Idaho 451, 457, 221 P. 1107, 1108 (1923). If we were to grant Chaney's adoption, at a minimum, we would be required to insert some provisions into I.C. § 16-1501 to effectuate an adult adoption. However, we have held that we cannot insert into statutes terms or provisions which are obviously not there. In re Dampier, 46 Idaho 195, 207, 267 P. 452, 455 (1928); Barnes v. Hinton, 103 Idaho 619, 620, 651 P.2d 553, 554 (Ct.App.1982). We have held that "[t]he legislature, and the legislature only, under our constitution, has the power to legislate." Thomas v. Riggs, 67 Idaho 223, 228, 175 P.2d 404, 407 (1946).
We are mindful that the Idaho Code requires us to adopt any suitable process or mode of proceeding which may appear "most conformable to the spirit of this code." I.C. § 1-1622. However we do not believe this provision is applicable here. In cases in which the Court has found I.C. § 1-1622 applicable, it adopted procedures for such situations as vacating or modifying a decree, or adopted a procedure to allow a wife to collect a property settlement. See Ratkowski v. Ratkowski, 115 Idaho 692, 769 P.2d 569 (1989), and Cornelison v. Cornelison, 53 Idaho 226, 23 P.2d 252 (1933). In these cases, it was simply a matter of filling in a particular act to effectuate the legislature's clear intent. In the present case, while the legislature certainly contemplated some type of proceeding whereby an adult could be adopted by another adult, it is not clear precisely in what instances this should be done or what the effects of such an adoption should be on the adopted adult and other family members. Any procedure created by this Court would infringe on the legislature's power to determine important public policy questions.
A brief look at the history of the adoption statutes in Idaho demonstrates that the legislature has not contemplated an adult adoption when the adoptee already has two parents. The legislature when it enacted the first adoption statute in 1879, clearly provided for minor adoptions only. 1879 Idaho Terr.Laws, 10th Sess. Then, in 1953, the legislature amended the statute to provide for adult adoptions which had not taken place during the adoptee's minority "by reason of inadvertence, mistake or neglect," and also providing that the person adopting must have sustained the relation of parent to the adoptee. I.C. § 16-1501 (1953). This amendment allowed an adult adoption only if it could have occurred during the adoptee's minority, and did not through no fault of the adoptee. Since the adoption of a minor requires the consent of any living parent or guardian, the legislature could not have intended to apply this procedure to a situation where there are two living parents, only one of whom consents to the adoption.
Although I.C. § 16-1501 was again amended in 1991, the brief legislative history available indicates that the situation where an adult adoptee petitioning for adoption already has two parents has not been addressed. Judiciary, Rules & Administration Committee Minutes, H.B. No. 154, 1991. Instead, the legislature was apparently addressing a situation where an adult wished to be adopted because he had never had a natural father listed on his birth certificate. Since he would have been unable to show he was not adopted as a minor due to inadvertence, neglect, or mistake, the legislature removed this requirement from the statute. The history of the adoption statutes, together with the 1991 legislative history, evidence no intent by the legislature to permit an adult adoption where the rights of a natural parent would be affected.
Creating a procedure for adult adoptions in this case would require this Court to address a situation that our legislature clearly has not foreseen. We cannot simply find that the requirements of I.C. § 16-1501 have *1066 been met, and therefore grant the adoption. To do so would create a procedure for adult adoptions in Idaho which does not even require the adoptee's consent. Above, we held that "child" as used throughout the adoption statutes refers to persons who are minors. Therefore, I.C. § 16-1505 which requires the consent of an adoptee "child" over age fourteen, is not applicable to adult adoptions. This points out the void left by the legislature when it only addressed adult adoptions in I.C. § 16-1501.
To create a procedure for adult adoptions, we would be confronted with such issues as whether the provision for an adoptee's consent in I.C. § 16-1505 applies; whether we should create a procedure to terminate Melling's parental rights; whether we should require Melling's consent; whether a home study should be required; what notice and hearings are appropriate; and whether, as many states have done, we should require the adoptee's spouse's consent. Even if we remain silent and simply allow the adoption to take place, we would be creating a procedure whereby the only element necessary for an adult adoption would be sustaining the relation of parent to the adopted person. Such a procedure would not even require the consent of the adoptee, and exemplifies the problems the Court would face in fashioning a procedure.
We have held that changes in public policy should come from the legislature. Anstine v. Hawkins, 92 Idaho 561, 563, 447 P.2d 677, 679 (1968). For example, in Anstine we held that the statutes on descent and distribution are a legislative declaration of public policy necessary for the orderly distribution of property. Id. at 563, 447 P.2d at 679. We further stated:
The legislature has the resources for the research, study and proper formulation of broad public policy. The legislature is better qualified than the courts, by virtue of a carefully formed statute, to provide for the orderly disposition of decedents' property....
Id. The determination of what terms must be added to the adult adoption statute is clearly a determination of public policy and must be left to our legislature. This conclusion is further buttressed by an examination of neighboring states' laws, all of which provide a specific procedure for adult adoptions within the adoption statutes. Wash.Rev. Code Ann. § 26.33.160 (1984), Or.Rev.Stat. § 109.329 (1952), Cal. [Family] Code § 9300 et seq. (West 1994), Utah Code Ann. § 78-30-1 (1990), Nev.Rev.Stat. §§ 127.190, 200, 210 (1959), Wyo.Stat. § 1-22-113 (1977), N.M.Stat.Ann. § 40-14-6 (Michie 1993), Ariz. Rev.Stat.Ann. § 8-132 (1988), Mont.Code Ann. 40-8-202 (1961), Alaska Stat. § 25.23.040(b) (1989).
The procedure for adult adoptions in Idaho is not provided for in our statutes and we do not agree with Chaney that this Court may pick and choose among the minor child adoption procedures to construct an adult adoption process. This is an area which is entirely statutory and we believe our legislature is better able to fill this void.

VI.

CONCLUSION
We hold that while I.C. § 16-1501 does permit adoptions of an adult by another adult, there is no procedure set forth by which to effectuate an adult adoption. Very clearly, consent of the adult adoptee's parents is not required. It is not for us to create a procedure in an area which is wholly statutory, for a situation not envisioned by our legislature, and which deals with matters of public policy. We, therefore, reverse the decision of the magistrate court permitting the adoption. We award costs as a matter of right to appellant, but no attorney fees on appeal.
McDEVITT, C.J. and REINHARDT, J. Pro Tem., concur.
JOHNSON, Justice, concurring in the result.
I concur in the result reached by the Court's opinion. In my view, the rationale for the decision should be that I.C. § 16-1501 does not contemplate the adoption of an adult under the circumstances of this case. In my view, where both of a person's parents are living when the person reaches adulthood, *1067 and where the parental rights of neither have been terminated, the statute does not contemplate that one who proposes to adopt the person can qualify as having "sustained the relation of parent" to the person.
SILAK, J., concurs.
NOTES
[1] Idaho Code § 16-1509 provides in pertinent part: "Unless the decree of adoption otherwise provides, the natural parents of an adopted child are, from the time of the adoption, relieved of all parental duties toward, and all responsibilities for, the child so adopted, ..."